(No. 54022)

JENNIFER JOHNSON, Appellant, v. THE BOARD OF EDUCATION OF DECATUR SCHOOL DISTRICT NO. 61, Appellee.

*Opinion filed June 26, 1981.*

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellant.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur (John T. Taylor, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Jennifer Johnson, a teacher in the Decatur high schools, sought a declaratory judgment and a writ of *mandamus* in the circuit court of Macon County. She alleged that she had been dismissed by the board of education of Decatur School District No. 61 of Macon County in violation of section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12), which accords certain rights to those teachers who have entered upon "continued contractual service" (tenure). The circuit court found that plaintiff had not achieved tenure and denied the reinstatement and damages requested by her. The appellate court affirmed. (87 Ill. App. 3d 441.) We granted plaintiff's petition for leave to appeal.

Plaintiff, who had taught in the district as a part-time teacher during a portion of the 1973-74 school term, served as a full-time high school art teacher for the 1974-75 and 1975-76 school terms. In March 1976 plaintiff was dismissed effective at the end of the 1975-76 term because of a shortage of funds. The sufficiency of the notice of dismissal is not questioned. Prior to the end of

that term, however, the board offered and plaintiff accepted part-time work for the 1976-77 term teaching an art class at each of two separate high schools. During the 1977-78 school term she taught art full time in a middle school in the district. In March 1978, on a date which the parties agree was more than 60 days prior to the end of the 1977-78 term, plaintiff received a notice by registered mail, stating that she would not be reemployed during the ensuing year. No hearing was scheduled by the board in connection with the 1978 dismissal, as would have been necessary for a tenured teacher. Plaintiff did not work for the board in any capacity during the 1978-79 school term, although two nontenured full-time art teachers were employed by the board during that term.

Section 24—11 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—11) provides, in part:

> "Sec. 24—11. Boards of Education—Boards of School Inspectors—Contractual continued service. As used in this and the succeeding Sections of this Article, 'teacher' means any or all school district employees regularly required to be certified under laws relating to the certification of teachers, 'board' means board of directors, board of education or board of school inspectors, as the case may be, and 'school term' means that portion of the school year, July 1 to the following June 30, when school is in actual session. This Section and Sections 24—12 through 24—16 of this Article apply only to school districts having less than 500,000 inhabitants.
>
> Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period. If, however, a teacher has not had one school term of full-time teaching experience before the beginning of such probationary period, the employing board may at its option extend such probationary period for one additional school term by giving the teacher written notice by registered mail at least 60 days before the end of the second

school term of the period of 2 consecutive school terms referred to above. Such notice must state the reasons for the one year extension and must outline the corrective actions which the teacher should take to satisfactorily complete probation.

Any full-time teacher who is completing the first year of the probationary period described in the preceding paragraph, or any teacher employed on a full-time basis not later than January 1 of the school term, shall receive written notice from the employing board at least 60 days before the end of any school term whether or not he will be re-employed for the following school term. If the board fails to give such notice, the employee shall be deemed reemployed, and not later than the close of the then current school term the board shall issue a regular contract to the employee as though the board had reemployed him in the usual manner.

\*\*\*

Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to this Act and the lawful regulations of the employing board."

Section 24—12 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) provides, in part:

"Sec. 24—12. Removal or dismissal of teachers in contractual continued service. If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. \*\*\* If the board within 1 calendar year thereafter increases the number of teachers or reinstates the position so discontinued,

the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions.

If a dismissal or removal is sought for any other reason or cause, including those under Section 10—22.4, the board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 10 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion. Written notice of such charges shall be served upon the teacher at least 21 days before the hearing date. Such notice shall contain a bill of particulars. ***.

Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

Both of the quoted sections conclude with paragraphs requiring full-time teaching service, or its statutorily defined equivalent, in order to achieve tenure in the special education and junior college programs.

Since the March 1976 written notice of dismissal stated a specific reason, was sent by registered mail, and was received more than 60 days prior to the end of the 1975-76 term, it satisfied the requirements of section 24—11 concerning dismissal of a teacher in the second consecutive probationary term. The March 1978 written notice of dismissal was received more than 60 days prior to the end of the 1977-78 term, thus it satisfied the requirements of section 24—11 concerning dismissal of a teacher in the first of two consecutive probationary terms. Plaintiff claims, however, that she was not properly dismissed in 1978 because the board did not comply with requirements of section 24—12 concerning dismissal of teachers who have attained tenure. The board neither scheduled a hearing in connnection with the 1978 dismissal, as would be required in the case of dismissal of a tenured teacher for

cause, nor offered the plaintiff one of the full-time art teacher positions occupied by nontenured teachers during the 1978-79 term. Plaintiff bases her claim that she was a tenured teacher during the 1977-78 term on the fact that, despite the 1976 notice of dismissal, she had been employed in a part-time position during a school term (1976-77) immediately following two consecutive terms (1974-75 and 1975-76) of full-time teaching. This case thus presents the question whether, after a second-term probationary teacher has received an appropriate notice of dismissal from her employing board, she should be accorded tenure rights by reason of subsequent part-time work for the same board.

The dispositive factor in our consideration is a determination of the intent of the legislature in enacting sections 24—11 and 24—12 of the School Code. One objective of teacher tenure is "to assure continuous service on the part of teachers of ability and experience." (*Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 268.) The tenure system is, we believe, intended to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers. Since, however, the statutes create liabilities where none would otherwise exist, they must be strictly construed in order not to unduly interfere with the responsibility of local boards to efficiently operate the educational systems. *Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127.

Section 24—11 focuses on the notice of dismissal as the operative fact in preventing tenure from arising. The statute gives teachers considerable protection, since it requires that the board take action in order to prevent tenure and treats silence as resulting in tenure. Once an appropriate notice of dismissal is given to a teacher com-

pleting his second consecutive probationary term, however, no tenure rights result, in the absence of some proof of intent to circumvent the spirit of the statute. Since plaintiff was given an appropriate notice in March 1976, she cannot be said to have had any tenure rights later in 1976, when she was offered the part-time employment.

This court recently stated:

" 'Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period' or continue at a salary not reduced from that of the previous year, except under specified conditions. (Ill. Rev. Stat. 1977, ch. 122, par. 24—11.) For this reason, among others, the terms of continued employment for a tenured teacher differ from those of the average employment contract. Under the latter, the employer offers a salary, the amount being totally discretionary, in exchange for a particular job performance, and if the employee is unwilling to accept the terms, employment may be terminated. A tenured teacher, however, has the option of declining the new contract and continuing employment, under the provisions of the School Code, at a salary and according to the terms of the prior year's contract." (*Bond v. Board of Education* (1980), 81 Ill. 2d 242, 249-50.)

In the present case the plaintiff, after receiving her 1976 notice of dismissal, did not qualify for the latter category. If she had rejected the board's subsequent offer of part-time employment she would have had no right to continued employment. The offer and acceptance of that part-time employment could not alone raise her status to that of a tenured teacher in view of the earlier dismissal. The fact that the 1976 notice did not denigrate plaintiff's abilities is not relevant, since the purpose of the pro-

bationary period is not only to test the teacher's ability, but also to assess whether such talents are needed by the employing school. Our conclusions are similar to those of the courts of New York, which do not generally treat part-time teaching as sufficient to constitute service for the purpose of acquiring tenure (*In re Rosenberg* (1976), 51 App. Div. 2d 551, 378 N.Y.S.2d 433; *In re Nyboe* (1958), 7 App. Div. 2d 822, 181 N.Y.S.2d 132; see *In re Becker* (1961), 9 N.Y.2d 111, 172 N.E.2d 568, 211 N.Y.S.2d 193), although part-time service is sometimes relied upon by those courts to find acquiescence and estoppel in cases where the employing board fails to take formal action to deny tenure. (See *In re Matthews* (1979), 67 App. Div. 2d 790, 412 N.Y.S.2d 501; *In re Dwyer* (1978), 61 App. Div. 2d 859, 402 N.Y.S.2d 67.) In the present case, of course, the board had taken action in 1976 to prevent tenure from accruing.

Our statute emphasizes the necessary relationship between full-time teaching and tenure. Section 24—11, after requiring that a candidate for tenure serve as a full-time teacher for a probationary period of two consecutive terms, states the effect of "contractual continued service":

> "Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to this Act and the lawful regulations of the employing board." (Ill. Rev. Stat. 1977, ch. 122, par. 24—11.)

"Contractual continued service" thus continues in effect the full-time service of the preceding two terms. Even if employment in the term immediately following the two probationary terms were to be sufficient alone, despite appropriate notice, to confer tenure rights, such employment would need to be on conditions equal to those of the employment during the last term of the probationary period, that is, employment on a full-time basis. Too, the General Assembly may have believed that part-time teach-

ing allows a divided loyalty and the pursuit of other activities. It may have been regarded as indicating a lack of the devotion to a profession which was desirable where a grant of long-term job security is contemplated.

The fact that section 24—11 provides for extension of the two-term probationary period in the case of a teacher who does not have a third term of full-time teaching experience (see *Glover v. Board of Education* (1975), 62 Ill. 2d 122) emphasizes the fact that the tenure system has as its goal the continued service of "teachers of ability and *experience*" (emphasis added) (*Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 268). Full-time teaching in the probationary period not only allows the board to observe the teacher under the stress of a full work load, but also gives the teacher experience. Full-time teaching after the probationary period and in the early stages of a teaching career continues to assure the board that skills will be properly developed so that the teacher retained will become an experienced, seasoned teacher. Plaintiff's reliance on *Brown v. Board of Education* (1976), 38 Ill. App. 3d 403, is misplaced. In *Brown* the appellate court held that a teacher who had taught full time from 1957 to 1972, acquiring tenure in 1959, did not lose that tenure merely because she had, because of poor health, taught half time during the 1972—73 school term. Part-time teaching agreed to by an experienced teacher who has tenure at the time of agreement may not cause that teacher to lose tenure, but part-time teaching cannot be relied upon by a nontenured teacher to establish tenure.

Courts of other States have discussed, in cases not cited by the parties, the relationship of their teacher-tenure statutes to those teaching part time. (*Independent School District No. 10 v. Lollar* (Okla. Ct. App. 1976), 547 P.2d 1324; *State v. Redman* (Alaska 1971), 491 P.2d 157; *Frye v. School Committee* (1938), 300 Mass. 537, 16 N.E.2d 41; *Sherrod v. Lawrenceburg School City* (1938),

213 Ind. 392, 12 N.E.2d 944.) It does not appear, however, that the statutes involved in those cases emphasized full-time employment to the extent our General Assembly has.

If the legislature had intended to accord tenure rights to those who teach on less than a full-time basis it would surely have given some guidance with respect to the difficult questions which would result. Foremost among these is determining the amount of teaching which would be sufficient to entitle one to tenure. Equitable treatment of those referred to as "substitute" teachers might be particularly difficult to achieve. (See *Ryan v. Superintendent of Schools* (1973), 363 Mass. 731, 297 N.E.2d 37.) Another problem is that of determining the nature of the tenure achieved by those teaching less than full time. If part-time teaching could result in tenure rights to full-time employment, districts which employ part-time teachers would have more "fully tenured" teachers than they have full-time teaching positions. Such proliferation of "fully tenured" teachers could, conceivably, result in an abundance of part-time teachers who would be preferred for full-time positions over career-oriented new teachers seeking full-time positions. If, on the other hand, tenure rights were to be fractionalized, the complications are obvious. School administrators would need to fit the "fractionally tenured" teachers together like a jigsaw puzzle. The growing number of "fractionally tenured" part-time teachers might undermine the desirable continuity and stability normally afforded students by full-time teachers, who have time to develop greater rapport with their students. Problems such as these may have been the reason for the General Assembly's emphasis upon the relationship between full-time teaching and tenure. In any event, given that emphasis, we believe the statute must be applied as we have interpreted it here. Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON, dissenting:

The majority reasons that Ms. Johnson, the teacher, had not achieved tenure and consequently was properly terminated. I disagree on the question of tenure. Although the school board here gave the teacher a notice that she would be dismissed at the end of the 1975-76 school year, it changed its mind before the dismissal took effect. It offered to continue her employment in the following school year, but only part time. The board thereby waived or withdrew its dismissal notice, particularly inasmuch as retaining her was not conditioned in any way upon the notice remaining valid. The continued employment of a teacher in a teaching capacity after the successful completion of 2 years of probationary service should be enough to grant the teacher tenure, even though the teacher is given a reduced teaching load.

The teacher-tenure statute (Ill. Rev. Stat. 1977, ch. 122, par. 24—11) is specific in requiring that probationary service be full time. There is no corresponding requirement that tenure, or "contractual continued service" as it is called, be full time. Tenured service is to be under the same "terms and provisions" as the last term of the probationary period, but nothing in the statute indicates that the teaching load is to be identical. The statute provides specifically for transfers and salary reductions, but places no limitation on the power of the school board and teacher to agree to reduce a teaching load to part time. I believe that this was not an oversight, but is consistent with the object of the tenure system.

The purpose of tenure is to assure teachers of ability and experience a continuous service, with rehiring based upon merit instead of partisan, political, or capricious reasons. (*Donahoo v. Board of Education* (1952), 413 Ill. 422, 425.) When teachers pass from probation to tenure they must do so on the basis of their performance. The statute is so drafted that continued hiring by the school board is presumed to be a favorable comment on the

teacher's performance.

Continued hiring of a teacher, even only under a reduced teaching load, is also a favorable comment on the teacher's performance, especially when, as was the case here, the reason for the part-time hiring was shortage of funds and had nothing to do with the teacher's professional performance. The board concedes that here the teacher was initially notified that she would be dismissed at the end of the school year because of the need to decrease the number of teachers employed. Her abilities and experience had nothing to do with the reduction. It was not unreasonable to conclude that, if the board could have found the necessary funding to continue an educational program calling for the teacher's talents, she would have been retained. When, therefore, she was not dismissed at the end of the year, but instead was offered continued part-time service, the proper conclusion would be that she had demonstrated to the board's satisfaction the teaching ability and 2 years' experience necessary to achieve tenure.

At the end of the 1975-76 school term, the school board had three options. It could dismiss Ms. Johnson. It could rehire her, thus granting her tenure. Or it could extend her probationary term for another year (see *Glover v. Board of Education* (1975), 62 Ill. 2d 122). The board chose to rehire her without extending her probationary status. I believe that the circumstances surrounding the rehiring of Ms. Johnson after 2 years of successful probationary teaching demonstrated the board's intention to grant her tenure.

The tenure requirements of school systems in other States are instructive. Massachusetts makes no distinction between full- and part-time teaching for tenure purposes, so long as the employment has been substantial. (*Frye v. School Committee* (1938), 300 Mass. 537, 540, 16 N.E.2d 41, 42.) Indiana also makes no distinction because, like our statute, its "law does not require that teachers shall

teach every day, or every hour of every day. Such subjects as art or music may require fewer hours of teaching." (*Sherrod v. Lawrenceburg School City* (1938), 213 Ind. 392, 394, 12 N.E.2d 944, 944-45.) Ms. Johnson is an art teacher.

Oklahoma treats full- and part-time teachers the same because its statute does not make separate classifications for full- and part-time teaching. (*Independent School District No. 10 v. Lollar* (Okla. Ct. App. 1976), 547 P.2d 1324.) And in Alaska, tenure is given to those whose statutory time in service has "afforded the Board of Education an adequate opportunity to observe the quality of [their] performance. *** When such a teacher's duties are regular and substantial enough to afford intelligent evaluation, we perceive little in the way of persuasive policy considerations for excluding such service from the ambit of our tenure laws." (*State v. Redman* (Alaska 1971), 491 P.2d 157, 159.) Alaska treats full- and part-time teaching the same.

Even in those States where part-time service does not count towards obtaining tenure (see, *e.g., In re Nyboe* (1958), 7 App. Div. 2d 822, 181 N.Y.S.2d 132), that rule does not apply to part-time service following the completion of a full-time probationary period. (*In re Matthews* (1979), 67 App. Div. 2d 790, 792, 412 N.Y.S.2d 501, 503.) "All petitioner need show is that she continued in [the board's] employ beyond the probationary term and that she continued to receive her salary with the knowledge and consent of the [board]." (*In re Dwyer* (1978), 61 App. Div. 2d 859, 402 N.Y.S.2d 67, 68.) So long as our statute does not make a distinction between full- and part-time teaching for purposes of tenure after 2 years of full-time teaching during the probationary period has been satisfied, I believe that no such distinction should be created.

Practically speaking, our schools currently face un-

precedented difficulties as bloated teaching staffs must be trimmed to meet declining enrollments. The necessary consequence in many cases may be that full-time teachers will have to take salary cuts or reduce their teaching loads. Doing either should not reflect on their status as tenured teachers. Accepting higher pay or increased teaching loads did not affect tenure status when staffs were low and enrollments high; accepting lower salaries or decreased teaching loads should not affect tenure status when the situation is reversed. The majority points out some of the difficulties school boards will face when they have more tenured teachers than can be employed full time. Where teachers are willing to reduce their teaching to a part-time schedule in the face of decreased demand for their services, I do not believe they should also suffer denial of tenure. I respectfully dissent.