ALICIA KUYKENDALL, Plaintiff-Appellee, *v.* THE BOARD OF EDUCA-
TION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT NO. 202,
Defendant-Appellant.

First District (3rd Division) No. 81—854

Opinion filed December 30, 1982.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Solomon I. Hirsh, of Hirsh & Schwartzman, P.C., of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Alicia Kuykendall, sought a declaratory judgment that she had entered upon contractual continued service within the meaning of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—11), and a writ of *mandamus* directing defendant, the Board of Education of Evanston Township High School District No. 202, to reinstate her to a teaching position. The trial court granted plaintiff's motion for summary judgment, denied defendant's cross-motion for summary judgment and ordered the relief plaintiff requested. We reverse and enter summary judgment in favor of defendant.

The material facts are undisputed. On August 22, 1977, defendant appointed plaintiff to teach business education for nine weeks to replace a teacher on leave. On November 14, 1977, defendant appointed plaintiff to a part-time position as a business education teacher, which she held from November 15, 1977, until April 6, 1978. On November 28, 1977, defendant ratified plaintiff's appointment to a full-time position beginning November 7, 1977, and ending July 21, 1978, as a business education teacher in Project Employment No. 202, an adult education training program wholly Federally funded under title I of the Comprehensive Employment and Training Act of 1973 (CETA) (29 U.S.C. sec. 801 *et seq.* (1976)). For the 1978-79 school term, plaintiff taught vocational experience in defendant's high school program. Defendant re-employed plaintiff in that position, with a salary increase, for the 1979-80 school term. On March 17, 1980, defendant notified plaintiff, in accordance with the statutory requirements for teachers who have not entered into contractual continued service, that she would be dismissed at the end of the 1979-80 school term.

The teacher tenure statute which is applicable to school districts having less than 500,000 inhabitants (Ill. Rev. Stat. 1977, ch. 122, par. 24—11) provides:

> "Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period."

The statute defines "teacher" as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers ***." (Ill. Rev. Stat. 1977, ch. 122, par. 24—11.) The

statute does not define "full-time." Nor does it specifically provide for teachers whose positions are wholly Federally funded.

In this case, the parties disagree on whether the 1977-78 school term was plaintiff's first probationary year. We believe that there is no question that defendant employed plaintiff during the 1977-78 school term.[1] The issue is whether defendant employed plaintiff as a full-time teacher within the meaning of the teacher tenure statute for the purpose of determining contractual continued service.

■ Plaintiff maintains that her initial nine-week appointment in the high school to replace a teacher on leave was properly included as part of her first probationary year. We disagree. Although the position was full-time in terms of hours per day and teaching load, it was merely temporary. Temporary employees cannot be permitted to nullify the purposes of tenure laws by gradually acquiring tenure rights. (*People ex rel. Thomas v. Board of Education* (1963), 40 Ill. App. 2d 308, 313, 188 N.E.2d 237, 240.) We therefore conclude that plaintiff's nine-week appointment cannot be counted toward her probationary period. Our conclusion does not permit, as plaintiff suggests, the denial of tenure by the appointment of teachers for a few weeks at a time, term after term. The courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments in ways which circumvent the purpose and spirit of the tenure laws. *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 944, 372 N.E.2d 990, 994.

■ Although plaintiff does not argue that her other 1977-78 position in defendant's high school program, a part-time business education appointment, was full-time, she maintains that this appointment confirms her status as a regular member of the high school faculty. We disagree. Since a nontenured teacher cannot rely upon part-time teaching to establish tenure (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 347, 423 N.E.2d 903, 908), plaintiff's part-time position was insufficient to count toward her probationary period.

Central to plaintiff's argument that 1977-78 was her first probationary year is her contention that her teaching in a Federally funded program was properly included as part of her first probationary year. During the 1977-78 school term, plaintiff's longest teaching assignment was her position as a business education teacher in the adult education program funded under CETA. As a CETA teacher, plaintiff's

---

[1]We decline to find that plaintiff was merely a Federal employee assigned to the school district under the provisions of the CETA program. Contra, *McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 1026, 384 N.E.2d 540, 541-42.

salary and benefits were paid by defendant, which was reimbursed by the Federal government via the Cook County Office of Manpower Services. Also, plaintiff's students were not high school students, but specially selected unemployed, underemployed or economically disadvantaged trainees who were paid to attend classes. Under these circumstances, we believe that plaintiff's CETA teaching cannot be included as part of her first probationary year.

■ One purpose of the tenure system is to provide teachers of ability and experience some degree of job security. (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906.) The teacher tenure statute provides that tenured service continues in effect the terms and provisions of a teacher's contract for the last school term of the probationary period. Therefore, the legislature must have intended that tenure result from service in positions over which local school boards have control. (See *Hayes v. Orleans Parish School Board* (1970), 256 La. 677, 237 So. 2d 681.) It would be unrealistic and impractical to require local school boards to give teachers job security on the basis of positions over which the boards themselves have no control. Since the local boards have no control over the continuation of positions which are wholly Federally funded, we believe that teachers in programs that are wholly Federally funded are not full-time teachers within the meaning of the teacher tenure statute.[2] We therefore conclude that when a school district employee teaches in a wholly Federally funded program, that employment cannot be considered part of a probationary year.

Our conclusion is supported by the well-established principle that the teacher tenure statute must be strictly construed in order not to interfere unduly with the responsibility of local boards to operate the educational systems efficiently. (See *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906; *Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127, 130, 340 N.E.2d 7, 9.) Our courts have applied this principle in determining that neither part-time teaching (*Johnson*) nor substitute teaching (*Booker v. Hutsonville School District No. 1* (1982), 107 Ill. App. 3d 357, 437 N.E.2d 937) is

---

[2]Our decision does not affect the tenure status of school district employees who entered upon contractual continued service prior to teaching in a wholly Federally funded program. *Cf. Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 347, 423 N.E.2d 903, 908, where the court noted that part-time teaching agreed to by an experienced teacher who has tenure at the time of the agreement may not cause that teacher to lose tenure, but part-time teaching cannot be relied upon by a non-tenured teacher to establish tenure.

probationary service which can be relied upon by a nontenured teacher to establish tenure.

■■ We find further support for our conclusion in the nature of the probationary period itself. The probationary period is a testing period that begins with the date of the appointment which will ripen into a permanent position. (*Strejcek v. Board of Education* (1979), 78 Ill. App. 3d 400, 403, 397 N.E.2d 448, 451.) The probationary period gives an employee the opportunity to prove himself, and it also permits an employer to evaluate the employee's performance before being committed to contractual continued service. (*Seim v. Board of Education* (1974), 21 Ill. App. 3d 386, 392, 315 N.E.2d 282, 287.) However, the probationary period may be inadequate to accomplish these objectives if a teacher does not teach in a regular high school program, but rather, trains paid participants in a wholly Federally funded program such as CETA. We have recognized that a school board must have maximum flexibility in dealing with probationary teachers. (See *Rockford Education Association v. Board of Education* (1973), 11 Ill. App. 3d 78, 80, 296 N.E.2d 100, 102.) We believe that this essential flexibility would be inhibited if wholly Federally funded positions were included as part of a probationary period and simply ripened into permanent positions. Therefore, plaintiff's position as a CETA teacher could not be considered part of her first probationary year.

Since none of the three positions which plaintiff held during the 1977-78 school term could be counted as part of a probationary period within the meaning of the teacher tenure statute, we conclude that the 1977-78 term was not plaintiff's first probationary year. Accordingly, the summary judgment for plaintiff is reversed, and defendant's cross-motion for summary judgment is granted.

Reversed. Summary judgment is entered in favor of defendant.

McNAMARA and McGILLICUDDY, JJ., concur.