THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Plaintiff-Appellee, *v.* BRENDA TAYLOR *et al.*, Defendants-Appellants.

First District (1st Division)   No. 81—3123

Opinion filed April 25, 1983.

Gilbert Feldman, of Cornfield and Feldman, of Chicago, for appellants.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants Brenda Taylor and Joyce Smith appeal from a summary judgment granted in favor of plaintiff, the Board of Trustees of Community College District No. 508 (City Colleges of Chicago), declaring that two teachers dismissed by the City Colleges were not tenured faculty members entitled to the benefits of the tenure provisions of the Public Community College Act (Ill. Rev. Stat. 1981, ch. 122, par. 103B—1 *et seq.*) (hereinafter referred to as Community College Tenure Act). On appeal, defendants raise the issue whether defendants, by reason of their positions as project training specialists in the Comprehensive Employment and Training Act (CETA) program at plaintiff's college, may be considered to be faculty members eligible to gain tenure under the Community College Tenure Act. Plaintiff, by cross-appeal, raises in the alternative issue whether employment prior to the effective date of the Community College Tenure Act may be counted toward acquiring tenure under the Act.

Defendants Smith and Taylor were dismissed on January 26, 1981, from their positions as project training specialists in plaintiff's CETA-funded licensed practical nurse training program at the William L. Dawson Skills Center. Both requested that plaintiff hold hearings on their dismissal pursuant to section 103B—4 of the Community College Tenure Act. On March 31, 1981, plaintiff brought this suit to ob-

tain a declaratory judgment that (1) defendants, as CETA project training specialists, were not faculty members within the meaning of the Community College Tenure Act and, therefore, not entitled to protection under its provisions with respect to dismissal of tenured teachers; and, alternatively, (2) defendants did not acquire tenure under the Tenure Act until they had completed three consecutive years of full-time service after the January 1, 1980, effective date of the Act.

Affidavits and exhibits filed by the parties indicate that Joyce Smith had been employed since the fall, 1975, and Brenda Taylor had been employed since the fall, 1977. The licensed practical nurse program in which defendants taught lasts 54 weeks and consists of both classroom and clinical teaching. The students are prepared to take the State board examinations to receive licensed practical nurse certification. The City Colleges also maintain a registered nurse program at four of their colleges. These programs last two years and prepare the students to take the State board examinations for certification as registered nurses.

Plaintiff's affidavits establish that the licensed practical nurse program in which defendants worked is a manpower training program federally funded under title I of the Comprehensive Employment and Training Act of 1973 (29 U.S.C. sec. 801 *et seq.* (1976)) (herein referred to as CETA). The manpower training program does not give academic credit or academic degrees. Trainees in the program must qualify under CETA income level requirements and are evaluated and recruited by the Illinois Job Services Department. CETA trainees are paid the Federal minimum wage for their participation in the training program. Project training specialists, such as defendants, are employed for the duration of the CETA funding grant which runs yearly from October 1 to September 30 of the following year. Both project training specialists and trainees are subject to numerous Federal and State regulations specifying fixed work schedules, prescribed lunch hours and breaks, paid vacations and specified grievance procedures.

Plaintiff argued that the following differences exist between CETA project training specialists and plaintiff's regular faculty. CETA project training specialists are paid through a grant from the Federal government, while plaintiff's academic faculty are paid through tuition, real estate taxes and State aid. Unlike defendants, plaintiff's faculty sign written employment contracts with plaintiff. Defendants are subject to only specific portions of the collective bargaining agreement that covers plaintiff's faculty. Defendants also enjoy different working conditions than plaintiff's regular faculty. Defendants work

an October to September school year and receive paid vacations which may be scheduled throughout that year. Plaintiff's faculty works an academic year from August to May and do not receive paid vacations. Defendants are subject to work schedules fixed by Federal regulations and must remain at the training sites except for their prescribed breaks while plaintiff's regular faculty members do not have fixed work schedules and are not required to remain on campus except as their professional duties dictate.

The trial court granted plaintiff's motion for summary judgment. The court found that project training specialists were not faculty members within the meaning of section 103B—1 and, therefore, not eligible to receive tenure. The court stated:

"They have no certainty of continued employment by reason of the federal grant status, and the Court will not extend the very broad tenured provisions of the statute to this category or class of employee. To do so would in the Court's opinion impose intolerable burdens on school district and other public agencies * * *; and * * * the local taxing bodies would be obligated to provide permanent employment when no permanent employment was contemplated."

The record reveals that prior to the enactment of the Act, the granting of tenure was left to the voluntary discretion of the individual community college districts. Ten of the State's 39 community college districts had no provisions for faculty tenure. A collective bargaining agreement governed the awarding of tenure to faculty at plaintiff's colleges and project training specialists were specifically excluded from the tenure provisions of that agreement.

The tenure provisions of the Public Community College Act (Ill. Rev. Stat. 1981, ch. 122, par. 103B—1 *et seq.*) became effective on January 1, 1980. The Act established that tenured status may be achieved by faculty members within all of the State's community colleges. The Act provides that faculty members who have been employed by a community college school district for three consecutive school years shall receive tenure unless the board gives the faculty member notice of dismissal 60 days prior to the end of the third school year. The board also may give the faculty member timely notice that the period before acquiring tenure has been extended for an additional year. A tenured faculty member then has a vested contractual right to continued employment as a faculty member subject to termination only upon dismissal for cause or a reduction in size, or termination of, a teaching program (Ill. Rev. Stat. 1981, ch. 122, par. 103B—2). The Act provides that an impartial hearing officer shall de-

cide whether cause for dismissal exists. (Ill. Rev. Stat. 1981, ch. 122, par. 103B—4.) If a tenured faculty member is dismissed because of a reduction in staff, that faculty member has as a preferred right for 24 months to reappointment in any position which the faculty member is qualified to fill. (Ill. Rev. Stat. 1981, ch. 122, par. 103B—5.) The Act contains the following definition of "faculty member":

" 'Faculty Member' means a full time employee of the District regularly engaged in teaching or academic support services, but excluding supervisors, administrators and clerical employees." Ill. Rev. Stat. 1981, ch. 122, par. 103B—1.

On appeal, defendants contend that by the clear and unambiguous language of the Act, the statutory definition of faculty member includes project training specialists. Defendants argue that the trial court misconstrued the Tenure Act by adding exclusions to the definition of faculty member that are not found within the statute or the legislative history of the Act. Defendants assert that the trial court exceeded its authority by substituting its judgment for that of the legislature in determining tenure policy for the State's community colleges.

Plaintiff argues that in view of the numerous undisputed differences between CETA project training specialists and plaintiff's regular faculty, defendants cannot be considered to be "regularly engaged in teaching or academic support services." (Ill. Rev. Stat. 1981, ch. 122, par. 103B—1.) Also, plaintiff argues that defendants cannot be considered to be "regularly engaged" because of the inherent irregularity of grant funding. Plaintiff has no assurance that any particular grant application will be approved, and any grant can be declared void for conditions outside of plaintiff's control. Plaintiff further argues that the statute's implementation of tenure, which occurs automatically if notice is not given 60 days prior to the end of the school year, clearly contemplates that a faculty member's employment will be coextensive with the school year. If these provisions are applied to CETA personnel, plaintiff would be required to make personnel decisions in March, six months before the current CETA project grant would end. Plaintiff argues that the legislature could not have intended such premature and unfair personnel decisions as would result when the Tenure Act is applied to project training specialists.

■■■ The cardinal rule of statutory interpretation is to ascertain and give effect to the true intent and meaning of the legislature. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 112, 338 N.E.2d 561, 564.) The language used is the primary source for determining this intent (*General Motors Corp.*), and if legislative intent

can be ascertained from its provisions, that intent will prevail without resorting to other aids for construction. But where differing interpretations are proffered, legislative intent must be determined from the reasons for the enactment and the purposes to be thereby attained as well as the meaning of the words enlarged or restricted according to their real intent. *In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 438, 337 N.E.2d 8, 13.

■ The supreme court, in *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 423 N.E.2d 903, stated that the tenure system is intended "to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers." (85 Ill. 2d 338, 344, 423 N.E.2d 903, 906.) The court held, however, that since tenure statutes create liabilities where none would otherwise exist, a statute granting tenure "must be strictly construed in order not to unduly interfere with the responsibility of local boards to efficiently operate the educational systems." 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906.

■ Where legislative intent is not clear it is also proper to compare the statute in question with statutes upon related subjects even though not strictly in *pari materia* (*Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 202 N.E.2d 489). The School Code (Ill. Rev. Stat. 1979, ch. 122, pars. 24—11 through 24—16) provides *inter alia* for tenure status to be achieved by teachers in the State's public schools. In *McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 384 N.E.2d 540, the court considered the issue whether a tenured teacher who had been honorably dismissed because of a reduction in the teaching program had a right under the School Code to fill a vacancy occurring in a CETA position. The court held that since the CETA position was indirectly paid by the county which administered the CETA program and the CETA teacher was not under written contract with the board of education, the CETA position was not a new or reinstated position funded by the district within the meaning of the School Code and, therefore, was not available to a claim by a tenured teacher. 66 Ill. App. 3d 1024, 1026, 384 N.E.2d 540, 542.

Recently, in *Kuykendall v. Board of Education* (1982), 111 Ill. App. 3d 809, 444 N.E.2d 766, the appellate court determined whether a teacher may consider time spent teaching in a CETA program to be properly included as part of the probationary period necessary to acquire tenure under section 24—11 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—11). The court held that since local school boards have no control over continuation of positions which are wholly

federally funded, teachers in federally funded programs are not full-time teachers within the meaning of the statute and are not, therefore, entitled to count time spent teaching in CETA programs toward obtaining tenure. The court further reasoned that the nature of the probationary period allows the employee to prove himself and the employer to evaluate his service before the position becomes permanent. A probationary position may be inadequate to accomplish these objectives if the teacher trains participants in a CETA program rather than teaching in a regular high school program. The court noted that the flexibility that is essential for the probationary period would be lost if CETA positions were included as part of the probationary period and ripened into permanent positions. As *Kuykendall* noted, "[i]t would be unrealistic and impractical to require school boards to give teachers job security on the basis of positions over which the boards themselves have no control." 111 Ill. App. 3d 809, 812, 444 N.E.2d 766, 769-70.

■■ The Community College Tenure Act, like the School Code, requires a period of employment in the community college district before tenure is granted thus allowing the board to evaluate the performance of the faculty member and to determine whether the long-term needs of the college are such that a particular professor should become a permanent member of the faculty. As the court concluded in *Kuykendall*, a project training specialist who teaches trainees in a federally funded program cannot be considered a full-time employee of the community college district for the purpose of satisfying the consecutive years of service required by the Tenure Act.

■■ The Tenure Act further limits the definition of faculty member to those employees "regularly engaged in teaching." Plaintiff argues that in view of the numerous differences between project training specialists and plaintiff's academic faculty, defendants cannot be considered to be regularly engaged in teaching within the meaning of the statute. We agree. Defendant's working conditions and job benefits are set by Federal regulation and differ vastly from those plaintiff has established for its faculty. Defendants, unlike plaintiff's academic faculty, do not sign employment contracts with plaintiff. Defendants teach paid trainees selected not through plaintiff's admission process but, rather, by a State agency in compliance with Federal regulations. Plaintiff has no control over whether and to what extent the federally funded CETA program grant will be approved for the City Colleges. Defendant has not shown us that the legislature intended when it passed the Community College Tenure Act to extend the benefits of tenure to personnel such as defendants.

When the intent of the legislature is determined from the language of the statute, the purposes of a tenure system and the interpretations of similar tenure provisions in the School Code, we conclude that the legislature did not intend to extend the tenure provisions of the Community College Tenure Act to project training specialists in CETA programs. In view of our decision with respect to defendants' appeal, we find it unnecessary to consider the issue raised by plaintiff's cross-appeal.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.