**Jill DAUEL, Plaintiff-Appellant,**

v.

**BOARD OF TRUSTEES OF ELGIN COMMUNITY COLLEGE, et al., Defendants-Appellees.**

Nos. 84–1176, 84–2472.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1985.

Decided July 3, 1985.

Mildred F. Haggerty, DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiff-appellant.

Terry P. Boose, Shearer, Blood, Agrella, Boose & Balog, St. Charles, Ill., for defendants-appellees.

Before BAUER and POSNER, Circuit Judges, and MORTON, Senior District Judge.*

POSNER, Circuit Judge.

Mrs. Dauel was employed by the Elgin Community College, which is owned by the State of Illinois and which fired her without a hearing after she had been an employee for more than three years. If she was a "faculty member" she had tenure, Ill.Rev.Stat.1983, ch. 122 ¶ 103B–2, which is "property" as the due process clause of the Fourteenth Amendment has been interpreted, and she could not be fired without a hearing, for that would be a deprivation of her property by a state agency without due process of law. " 'Faculty Member' means a full time employee ... regularly engaged in teaching or academic support services, but excluding supervisors, administrators and clerical employees." ¶ 103B–1. The district court held that Mrs. Dauel was not a faculty member, and she appeals.

As is usually the case in Illinois (indeed in most states) there is no published legislative history of this statute. There is also no case construing it in any particular relevant to this case. Indeed, nothing relevant to the present case seems to be known about the statute except what can be inferred from its words. *Kuykendall v. Board of Educ.*, 111 Ill.App.3d 809, 812–13, 67 Ill.Dec. 530, 444 N.E.2d 766, 770 (1982), and cases cited there, hold that "the teacher tenure statute must be strictly construed in order not to interfere unduly with the responsibility of local boards to operate the educational systems efficiently." But the teacher-tenure statute, Ill.Rev.Stat. 1983, ch. 122, ¶ 24–11, gives tenure only to

* Hon. L. Clure Morton of the Middle District of    Tennessee, sitting by designation.

"full-time teacher[s]." The community-college statute is not so limited, and whether the Illinois courts would construe it strictly or liberally we cannot say (and do not think it would make a difference). The myriad of cases, in Illinois and elsewhere, that define the word "teacher" as it appears in teacher-tenure statutes, see, e.g., *Smith v. Board of Educ.*, 708 F.2d 258, 261–62 (7th Cir.1983); *State ex rel. Haak v. Board of Educ.*, 367 N.W.2d 461, 464–65 (Minn.1985), cast no light on the different statutory term that we must define.

We have not been able to find a similar statute in any other state. The closest parallel is found in cases dealing with whether to include librarians and other ancillary academic workers in the same collective bargaining unit with faculty members, an issue that has arisen frequently under provisions of state and federal law relating to union organizing. Sometimes the ancillary workers are included, as possessing the requisite community of interest, sometimes not. See, e.g., *Renton Education Ass'n v. Public Employment Relations Comm'n*, 101 Wash.2d 435, 440–44, 680 P.2d 40, 44–46 (1984); *Northeastern University*, 218 N.L.R.B. 247 (1985); Cresswell, Murphy & Kerchner, Teachers, Unions, and Collective Bargaining in Public Education 162–64, 297–98 (1980); Campus Employment Relations 74–76 (Tice ed. 1976). But the purpose of unit determination in labor-relations cases is so different from that of a tenure statute that we cannot get much help from the unit cases.

There is no doubt about what Mrs. Dauel actually did, as opposed to the legal characterization of what she did. An "Audiotutorial Nursing Laboratory Instructor," she ran two laboratories used for the college's program of instruction in nursing, and thus she had a managerial and technical job—but that was not all. One of the laboratories was a "learning lab" to which students having problems in mastering particular nursing skills would repair for informal instruction—from Mrs. Dauel. She was also responsible for instructing all of the students in certain nursing skills, such as catheterization. She made occasional written evaluations of students whom she instructed and she also did substitute teaching (200 hours in three years), attended faculty meetings, and, unlike an administrator, was employed on an academic schedule (i.e., not during the summer). The defendants do not argue that because she had summers off she was not "full time" within the meaning of the statute; if the argument were accepted no college teacher would have tenure. She was fired because she didn't have a master's degree in nursing—a requirement for faculty members of the nursing department.

Mrs. Dauel was engaged in teaching on a regular, though not full-time basis. The statute requires that the employee be full-time (which, as we have said, is conceded), but not that the teaching be full-time. It is enough if it is "regular"; it was regular. The fact that it was mainly laboratory instruction does not disqualify it from being teaching. Scientists who teach only laboratory courses are regular teachers protected by college and university tenure systems. The only thing Mrs. Dauel did that was not teaching was running the laboratories, but the college does not argue that she was a supervisor. Maybe she had no one under her; in any event it would seem that supervision, if any, was incidental to the instruction rather than vice versa.

■ And remember that the statute defines "faculty member" as including (with immaterial exceptions) providers of "academic support services." If what Mrs. Dauel did was not teaching (though we think it was), it certainly was the provision of academic support. The college argues that only research assistants are engaged in academic support; that librarians, for example, are not. But academic support is not only research support; it is also teaching support. The college's insistence that Mrs. Dauel have a master's degree in nursing is inconsistent with the college's argument that if she is providing academic support so are the janitors.

The statute is badly drafted. Read literally it would embrace janitors since they

provide academic support in a sense yet are not within the express exclusions for supervisors, administrators, and clerical employees. Academic support should be interpreted more narrowly, as limited to people whose function partakes of the academic. The language of the statute conveys enough sense of purpose to allow us to depart this far from a literal reading. But teaching is an academic function, and a person who assists in that teaching, as Mrs. Dauel most definitely did, is providing academic support.

Maybe the statute was not intended to embrace a Mrs. Dauel, but since we are unable to find out anything about the statute other than what it says, our capacity for imaginative interpretation is confined. Mrs. Dauel fits very comfortably within its language and so far as appears its generous purpose, and that is enough to carry the day for her.

 This is not to say that the college could not fire her; but it had to give her a hearing, and did not. This might seem a harmless error, since Mrs. Dauel does not attack the validity of the regulation that requires a member of the nursing faculty to have a master's degree in nursing, the applicability of the regulation to her, and the fact that she doesn't have such a degree. She does, however, argue that other faculty members have not been fired for violating the regulation but instead have been given several years to get into compliance by getting a master's degree, a grace period not vouchsafed to her. Now it is not a constitutional defense to being fired for violating a valid regulation that the regulation is not being uniformly enforced; there is no principle that unequal enforcement of a state statute or regulation is unconstitutional, unless, of course, the inequality has some invidious purpose, which is not alleged here. See, e.g., *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); cf. *Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). But all Mrs. Dauel is complaining about is the denial of a hearing at which she could have urged that she, like others in her position, be retained while she gets her master's degree. If it were clear that the regulation lacked enough "give" to accommodate her, the hearing would be a futile gesture and would not be required. But that is not clear; there is evidence that the regulation had been bent for others, and therefore might be bent for her. She was constitutionally entitled to a hearing to explore this possibility. The judgment for the defendants must therefore be reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.