ELROY-KENDALL-WILTON SCHOOLS, Plaintiff-Appellant,

v.

COOPERATIVE EDUCATIONAL SERVICE AGENCY, DISTRICT 12 (CESA 12), Defendant-Respondent.†

Court of Appeals

*No. 80–513. Argued December 5, 1980.—Decided April 27, 1981.*
(Also reported in 306 N.W.2d 89.)

For the plaintiff-appellant there was a brief by *Thompson Law Office* and oral argument by *Tommy G. Thompson,* of Mauston.

† Petition to review denied.

For the defendant-respondent there was a brief by *Joseph F. Preloznik* and *Preloznik, Mathis & Rhode, S.C.* and oral argument by *Joseph Preloznik* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This is an appeal by the Elroy-Kendall-Wilton Schools (school district) from an order dismissing its complaint for injunctive relief against the Cooperative Educational Service Agency, District 12 (CESA 12) for failure to state a cause of action. The complaint alleges that CESA 12 purchased real estate in February, 1978 and intended to purchase additional real estate using state and federal monies and monies which had been assessed against its members pursuant to sec. 116.03(4), Stats. The relief sought is an injunction ordering CESA 12 to divest itself of its present real estate holdings and prohibiting it from purchasing additional real estate.

The issue on appeal is whether CESAs, which are governed by ch. 116, Stats., have the power to purchase real estate under sec. 116.03. That section sets forth the duties of the agencies' governing body, the board of control. It provides in material part that the board shall:

(10) Authorize the expenditure of money for the purposes set forth in this subchapter and for the actual and necessary expenses of the board and agency administrator *and for the acquisition of* equipment, *space* and personnel. All accounts of the agency shall be paid by check signed by the chairperson and secretary. (Emphasis supplied.)

The circuit court construed the legislative authorization of space acquisition to include the purchase of real estate. We reverse.

The question before us is one of law. A reviewing court accords no deference to the trial court's determination of such questions. *First Nat. Leasing Corp. v.*

*Madison,* 81 Wis.2d 205, 208, 260 N.W.2d 251, 253 (1977); *Roe v. Larson,* 94 Wis.2d 204, 206, 287 N.W.2d 824, 825 (Ct. App. 1979), *rev'd on other grounds.*

The trial court relied on an opinion of the attorney general, issued in response to an inquiry from the state superintendent of public instruction. That opinion declared, without citation of case authority, that the statutory phrase "acquisition of . . . space" was "unquestionably" broad enough to include acquisitions of real estate.[1] The opinion relied solely on the definition of "acquire" set forth in ch. 990, Stats., which provides general rules of construction for Wisconsin laws. Section 990.01 states in material part :

In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.

(2) ACQUIRE. "Acquire," when used in connection with a grant of power to any person, includes the acqui-

---

[1] The opinion states in material part:

Unquestionably the phrase "acquire space" is sufficiently broad to include acquisitions of real estate. "Space" itself includes lands. "Acquire" is defined by sec. 990.01(2), Stats., as including acquisition by "purchase, grant, gift or bequest." This definition would enable a CESA to receive a gift of real estate, and the word "grant" definitionally relates to the conveyance of real estate. *See, e.g.,* secs. 990.01(10) and 706.01(5), Stats. Had the Legislature intended that a CESA could only acquire "leasehold interests," or other property interests but not a fee interest it could have said so in explicit terms. To ascribe such a limited definition to "acquire" is inconsistent with normal usage of the word and its general definition in sec. 990.01(2), Stats.

Therefore, I conclude that a CESA may purchase interests in real as well as personal property.

sition by purchase, grant, gift or bequest. It includes the power to condemn in the cases specified in s. 32.02.

The opinion of the attorney general concluded that if the legislature had intended to limit CESAs to the acquisition of leasehold interests only, it would have stated that limitation expressly. The trial court's memorandum opinion concluded that the power to acquire real estate was inherent in the creation of the agency because if rental space were not available in a given community the CESA would have no alternative but to cease operations or to acquire real estate for space, which "should" be its right.

Neither opinion mentions two bills introduced during the 1973 legislative session which would have conferred express authority to CESAs or CESA members to purchase and hold real estate for agency purposes. Senate Bill 742 introduced on September 27, 1973, proposed to enact sec. 116.035 to authorize "any combination of school districts representing at least two-thirds of the districts within an agency" to "purchase, construct, establish, maintain and levy taxes to support an office facility and necessary real property for the use of the agency serving their district." The legislative reference bureau analysis of the bill states in part:

Current law permits boards of control of cooperative educational service agencies (CESA) to expend funds to lease office space for the operation of such agencies. No provision is made for the purchase of such office space.

The caption of the bill indicates that it was introduced by Senator Bidwell at the request of the respondent CESA 12. Assembly Bill 1452, introduced on February 13, 1974, was co-sponsored by Senator Bidwell and proposed a direct grant of power to CESAs to "[p]urchase, hold, encumber and dispose of real property, in the name of the agency, for use as its office or for any educational

service provided by the agency." Both bills died in committee.

An agency or board created by the legislature has only those powers which are expressly conferred or which are necessarily implied from the statutes under which it operates. *Racine Fire and Police Comm. v. Stanfield*, 70 Wis.2d 395, 234 N.W.2d 307 (1975); *Wisconsin's Environmental Decade, Inc. v. PSC*, 69 Wis.2d 1, 230 N.W.2d 243 (1975). "[A]ny reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority." *State (Dept. of Admin.) v. ILHR Dept.*, 77 Wis.2d 126, 136, 252 N.W.2d 353, 357–58 (1977), citing *State ex rel. Farrell v. Schubert*, 52 Wis.2d 351, 358, 190 N.W.2d 529, 532–33 (1971), *reh. den.* 409 U.S. 898 (1972), *vacated* 408 U.S. 915 (1972).

The statement of purpose set forth in sec. 116.01, Stats., indicates that CESAs were created by the legislature in recognition of "the need for a service unit between the local school district and the state superintendent" of public instruction. The statement of purpose continues:

The cooperative educational service agencies are designed to serve educational needs in all areas of Wisconsin and as a convenience for all areas of Wisconsin and as a convenience for school districts in cooperatively providing to teachers, students, school boards, administrators and others, special educational services including, without limitation because of enumeration, such programs as research, special student classes, human growth and development programs, data collection, processing and dissemination, in-service programs and liaison between the state and local school districts.

A CESA's board of control is authorized under sec. 116.03 (2), Stats., to receive state aid "for the operation

of the agency." That aid is separately conferred by sec. 116.08(1), which provides an amount "not to exceed $47,300 in 1979–80 and $50,600 annually thereafter" for each agency "for the *maintenance and operation of the office* of the board of control and agency administrator." (Emphasis supplied.) [2] Payment of the aid is conditioned on the filing of a certified annual statement of expenses for the prior year with the state superintendent showing "that the state aid was expended as provided by this section." Section 116.08(2) authorizes the agencies to "incur *short term loans,* but the outstanding amount of such loans at any one time shall not exceed 50% of the agency's receipts for the prior fiscal year." (Emphasis supplied.)

In addition to its other, largely ministerial duties listed in sec. 116.03(1) through (13), Stats., the board of control is required to:

(4) Determine each participating local unit's prorated share of the *cost of cooperative programs and assess the costs of each program* against each unit participating in the program *including,* without limitation because of enumeration, *unemployment compensation, litigation expense, collective bargaining and monetary awards by courts and agencies, but no board of control may levy any taxes.* No cost may be assessed against a unit for a cooperative program unless the unit enters into a contract for the service. (Emphasis supplied.)

■ Reading these sections together in the context of the entire ch. 116, Stats., compels the conclusion that the legislature did not intend to confer the power to acquire real estate when it imposed on the board of control a duty

---

[2] This section has been amended on various occasions to increase the amount of the annual aid. Section 116.08, Stats. (1977), which was applicable at the time of the alleged real estate purchase by CESA 12, provided a grant not to exceed $41,700 in 1977–78 and $44,200 annually thereafter.

to "[a]uthorize the expenditure of money for . . . the acquisition of equipment, space and personnel" under sec. 116.03(10).

Nowhere in ch. 116, Stats., is there a reference, express or implicit to real estate. No funding to acquire the same was provided. The CESAs may not levy taxes, may enter only into short term loans, and may assess their members only for the program costs in which the members participate under a contract for the service. State aids are awarded only for the operation of the office of the board and the agency administrator. There is no language remotely comparable to that contained in sec. 120.49(4), Stats., for instance, which authorizes school boards to "purchase sites for school buildings or other school uses and construct buildings or additions thereto" under the approval of the common council or fiscal board. Many other examples of express grants to agencies and municipal entities of power to acquire real property are found in the statutes.[3] The explicit detail with which such statutes are typically written persuades us that the legislature intended a different and more limited grant by the term "acquisition of . . . space."

This conclusion is buttressed by the introduction, at CESA 12's request, of the 1973 bills conferring expressly the authority it now claims to exist despite the legislature's failure to enact either bill. In *Chart v. Gutmann,* 44 Wis.2d 421, 434, 171 N.W.2d 331, 338 (1969), *cert.*

---

[3] *See, e.g.,* sec. 23.11(2), Stats. The Department of Natural Resources "may acquire such lands as may be necessary to construct highways that will furnish access" to inaccessible land under its supervision; sec. 23.09(2)(d); department may acquire "by purchase, lease or agreement, and receive by gifts or devise, lands or waters"; sec. 27.08, Stats., city board of park commissioners may acquire "real or personal property" for park purposes by "gift, devise, bequest or condemnation" and may "buy or lease lands" subject to the approval of the common council under subs. (2)(b).

*den.* 397 U.S. 973 (1970), the supreme court refused to construe then sec. 285.01, Stats., as providing a procedure for tort claimants to sue the state, observing that a bill then pending to enact such a procedure evinced the legislature's belief that the existing statute did not contain one. Minor modifications to the language of sec. 116.03(4), Stats., were made by sec. 2, ch. 221, Laws of 1977, but the substance of the statute remains the same as when the legislative reference bureau's analysis of Senate Bill 742 (1973) asserted that current law did not permit the purchase of real estate. We find no reason to believe that the legislature disagreed with that assertion.

The attorney general's reliance on the definition of "acquire" in sec. 990.01(2), Stats., is not well-placed. The definition is couched in terms of methods of acquisition, and does not purport to define the types of things which may be acquired by a person so empowered. The inclusion of the term "grant" in the list of the methods of acquisition included in the meaning of "acquire" offers no guidance for understanding the scope of a legislative authorization to expend money for the acquisition of space. The question whether the attorney general is correct in concluding that sec. 990.01(2) would enable a CESA to receive a gift or grant of real estate is not at issue in this appeal and we do not determine it.

The power to purchase real estate is not inherent in the nature of a CESA's duties. Those duties, discussed above, require office space in which to function and to house equipment, personnel, and records. It does not follow that the purchase, rather than the rental of such facilities, is necessary.

*By the Court.*—Order reversed and cause remanded for proceedings consistent with this opinion.