**Ricardo J. CARDENAS, Plaintiff,**

v.

**FIRE AND POLICE COMMISSION OF the CITY OF MILWAUKEE and City of Milwaukee, a municipal corporation, Defendants.**

No. CIV. A. 97–C–1238.

United States District Court,
E.D. Wisconsin.

Sept. 28, 2001.

John F. Fuchs, Jennifer R. Dorow, Fuchs, Snow, O'Connell & DeStefanis, Milwaukee, WI, for Plaintiff.

Stuart S. Mukamal, Susan E. Lappen, Assistant City Attorneys, Milwaukee, WI, for Defendants.

## DECISION AND ORDER DATED SEPTEMBER 28, 2001 GRANTING PLAINTIFF'S MOTION TO REVERSE THE FIRE AND POLICE COMMISSION'S DECISION DENYING A RESIDENCY WAIVER.

REYNOLDS, District Judge.

### I. INTRODUCTION

Plaintiff Ricardo J. Cardenas ("Cardenas") is a police officer with the City of Milwaukee police department. Cardenas has two deaf sons, aged fifteen and sixteen, who are currently attending and boarding at the Wisconsin School for the Deaf ("WSD") in Delavan, Wisconsin. Defendant Fire and Police Commission of the City of Milwaukee ("FPC") initially denied Cardenas' request for an exception to the defendant City of Milwaukee's ("City") residency requirement so that he could live with his sons near WSD. The court has reviewed the FPC's residency decision regarding Cardenas on two previous occasions. Most recently, on January 27, 2000, the court granted Cardenas' motion for

summary judgment with respect to Cardenas' state law claim for certiorari review and remanded the action to the FPC for further proceedings consistent with the January 27, 2000 order ("January 2000 Order"). The court retained jurisdiction over this action for purposes of review after remand.

On June 6, 2000, the FPC held a hearing on Cardenas' request for a residency waiver ("Hearing"), and on July 6, 2000, the FPC issued a decision denying Cardenas' request ("Decision"). Before the court is Cardenas' motion to reverse the Decision, which the court will grant.

## II. PROCEDURAL HISTORY

Cardenas' original complaint included claims arising under the United States Constitution and the Americans with Disabilities Act ("ADA"), as well as a petition for a writ of certiorari under Wisconsin law appealing the FPC's denial. The court exercised jurisdiction over the federal law claims under 28 U.S.C § 1331, and exercised supplemental jurisdiction over the state-law petition for certiorari as the petition shares a common nucleus of operative facts with Cardenas' federal claims. *See* 28 U.S.C. § 1367. *See also City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

Cardenas' sons have filed a separate action on their own behalf with respect to the FPC's denial of their father's request for a residency requirement waiver, and that action, Civil Action No. 99–832, is also pending before the court.

The court has issued two previous rulings in the instant case: a July 9, 1999 order, which granted the City's motion for summary judgment in part, and the January 2000 Order, which granted Cardenas' motion for summary judgment on the writ of certiorari and remanded the case to the FPC for further hearings.

The FPC held a hearing on June 6, 2000, after which it met in closed session. Then, on June 15, 2000, the FPC voted to deny Cardenas' request for a residency requirement waiver. The FPC stated its reasons in the July 6th, 2000 Decision. Cardenas now moves the court to reverse the Decision. The residency requirement at issue, along with the two previous rulings, are summarized below.

### A. The Residency Requirement

Pursuant to Milwaukee City Charter ("MCC") § 5–02.1, "[a]ll employees of the City of Milwaukee are required to establish and maintain their actual bona fide residences within the boundaries of the city." The FPC has the responsibility for administration, interpretation, and enforcement of MCC § 5–02 as it applies to members of the Milwaukee police force and the Milwaukee fire department. Section 5–02.7 of the MCC gives the FPC the authority to grant hardship exceptions to the residency requirement, and MCC § 5–02.8 sets forth the "Review Standards" which may be applied in considering a hardship request.

### B. The July 1999 Order

On January 8, 1999, Cardenas and the City filed cross-motions for summary judgment on all the issues raised in the complaint. In a July 9, 1999 order ("July 1999 Order"), the court, relying substantially upon the decision of the Court of Appeals for the Seventh Circuit in *Hameetman v. Chicago,* 776 F.2d 636 (7th Cir.1985), granted the FPC and the City summary judgment on Cardenas' constitutional and ADA claims, and granted Cardenas summary judgment on his state law claim for certiorari review. The July 1999 Order found that the record was insufficient to determine whether certiorari should be granted or denied and ordered the FPC to submit findings of fact and conclusions of law. Although the court granted the FPC

and the City summary judgment as to the federal claims, the court, using its discretion, retained jurisdiction over the pendent state claim. *See Centres, Inc. v. Town of Brookfield,* 148 F.3d 699 (7th Cir.1998). On September 10, 1999, the FPC submitted a summary of proceedings, findings of fact, and conclusions of law.

On December 1, 1999, Cardenas renewed his motion for summary judgment, urging the court to overturn the FPC's decision on the ground that the FPC had not provided a sufficient record regarding its decision to deny Cardenas' request. The FPC and the City stated that their previous filings would constitute their response to Cardenas' renewed motion for summary judgment.

In the January 2000 Order, the court granted Cardenas' motion for summary judgment as to the state law claim and remanded the action to the FPC.

### C. *The January 2000 Order*

Prior to the January 2000 Order, the City maintained that the MCC did not grant the FPC the authority to grant the type of residency exception requested by Cardenas.[1] Specifically, the City contended that MCC § 5–02.7, entitled "Hardship Exceptions," only permitted the FPC to grant exceptions to the residency requirement in instances where a City employee married an employee of a different city· that also had a residency requirement. In addition, the City argued that MCC § 5–02.8, entitled "Review Standards," only permitted the FPC to grant exceptions to the residency requirement when an exception to the residency requirement was necessary to fill a particular civil service position in order to contribute to the development of the civil service. The City called this exception the "business necessi-

ty exception." The City argued that MCC §§ 5–02.7 and 5–02.8 prevented the FPC from granting Cardenas' request for a residency waiver because Cardenas' request was not based on marriage or the "business necessity exception." The City argued that the MCC therefore prohibited the FPC from reaching the merits of Cardenas' request. In contrast, Cardenas argued that MCC §§ 5.02–7 and 5.02–8 contemplated residency requirement exceptions for reasons other than marriage and business necessity.

In the January 2000 Order, the court found that the plain language of MCC §§ 5–02.7 and 5–02.8 mandates that there are exceptions beyond marriage and business necessity for which the FPC is authorized to grant waivers to the residency requirement. The court remanded the action to the FPC and required the FPC to reach the merits of Cardenas' request and submit a copy of a written decision to the court. The FPC held a hearing on Cardenas' request on June 6, 2000, and deliberated in closed session. The FPC voted on June 15 to deny Cardenas' request for a hardship exception. In its July 2000 Decision, the FPC issued a written denial of Cardenas' request for a waiver.

### D. *The FPC's Decision*

The Decision contains (1) a summary of proceedings of the Hearing, (2) findings of fact, and (3) a summary of reasons for the FPC's decision. The FPC makes fourteen findings of fact. (Decision at 2.) The FPC's findings relate exclusively to either the conditions faced by the Cardenas children, regarding such things as where the boys attend school, the length of the school year, as well as the number of students enrolled, or to identifying the parties in the suit and the court order. (Decision at

---

1. The City and the FPC have advanced the same arguments throughout this action. For the sake of simplicity, the court will refer only to "the City" instead of "the City and the FPC" when discussing the arguments advanced by the City and the FPC.

2, 3.) In the summary of reasons for the decision, the FPC states that Cardenas chooses to send his sons to WSD, and although Cardenas has every right to make that very important choice, Cardenas' situation does not, in the FPC's estimation, warrant a hardship exception to the residency requirement. The FPC stated that a majority of WSD's students are boarders, and stated that other transportation options are available to the Cardenas family, such as having the older of the two boys drive them from home.

## III.  DISCUSSION

Cardenas moves the court to reverse the Decision which denied his request for a residency requirement waiver, arguing that the FPC (1) violated Wisconsin's Open Meeting Law, Wis. Stat. § 19.81–19.98, by deliberating about Cardenas' request in a closed session, (2) gave inadequate consideration to the requirements of Cardenas' sons Individual Education Plans; and (3) failed to comply with the January 2000 Order. The court does not find merit in either of the first two arguments, and does not reverse the FPC's decision on either basis. The court does, however, find merit in Cardenas' argument that the FPC failed to comply with the January 2000 Order. Each of the claims are discussed below.

### A.  *Wisconsin Open Meetings Law*

■ The Wisconsin Open Meetings Law requires that, in general, every meeting of a governmental body must be open to the public and preceded by public notice. *See* Wis. Stat. § 19.83. Cardenas argues that because the FPC deliberated and acted upon Cardenas' request for a waiver in a closed meeting, the court should declare the FPC's decision denying his request for a waiver void.[2]

The City argues that the FPC's deliberations regarding Cardenas' request fall within an exception to the. Open Meetings Law. Section 19.85(a) of the Wisconsin Statutes provides that a closed session may be held by a government body "deliberating concerning a case which was the subject of any judicial or quasi-judicial trial or hearing before that governmental body." The City contends that the Hearing was a quasi-judicial hearing, so it falls within the section 19.85(a) exception to the Open Meetings Law. Moreover, the City maintains that (1) Cardenas did not object to the FPC deliberating in a closed session at the Hearing; (2) the remedy for a violation of the Open Meetings Law is not reversing the FPC's decision, but rather remanding the action to the FPC for rehearing and further deliberations; (3) Cardenas had at one time, during a previous hearing, requested that the hearing be closed because he did not want information about his sons' medical information made public; and (4) Cardenas did not follow the statutorily prescribed steps for bringing a claim under Wisconsin Open Meetings Law.

Cardenas responds to these arguments by stating that the FPC's closed deliberation session did not fall into the exception for quasi-judicial hearings because Cardenas and the FPC were not adversarial parties. The Wisconsin Supreme Court has held, in *Hodge v. Town of Turtle Lake*, 180 Wis.2d 62, 508 N.W.2d 603 (1993), that a quasi-judicial proceeding

> contemplates a controversy between or among parties who are adverse to one another and a type of proceeding designed to redress wrongs or enforce

---

**2.**  Cardenas does not allege in his complaint, or in any supplemental pleading, that the City and the FPC violated the Open Meetings Law by deliberating about his waiver request in a closed session. Both parties, however, have fully briefed the Open Meetings Law argument. The court will therefore address the Open Meeting Law argument even though it has not been alleged by Cardenas in any pleading.

rights. It does not connote the idea of mere application and granting of a permit. The Board meeting [in the *Hodge* case] did not possess characteristics common to adversarial proceedings. Hodge was the only party here seeking a permit. The Board, as the governmental decision-making body like such bodies as the Wisconsin Employment Relations Commission, was not "a party in interest in the adversarial sense"....

The Board meeting [in the *Hodge* case] resembled a judicial proceeding only in that the Board was making a decision which would impact a particular individual.

*Id.* at 73–74, 508 N.W.2d 603 (citation omitted). The court need not decide the issue of whether the FPC's deliberations were part of a quasi-judicial proceeding that qualifies as an exception to the Open Meetings Law, however, because it is undisputed that Cardenas did not follow the steps necessary for bringing an Open Meetings Law challenge.

In order to bring an Open Meetings Law challenge, a plaintiff must first file a verified complaint with the district attorney (corporation counsel in Milwaukee).[3] If the district attorney (corporation counsel in Milwaukee) does not bring an enforcement action within twenty days after receiving the verified complaint, the plaintiff may commence an action for declaratory judgment or other relief. *See* Wis. Stat. §§ 19.97(1) to (4). *See also Auchinleck v. Town of LaGrange,* 200 Wis.2d 585, 593, 547 N.W.2d 587 (1996). In the case at hand, Cardenas does not respond to the argument that his Open Meetings Law challenge is barred because he did not file a verified complaint with corporation counsel as required by the Open Meetings Law, Wis. Stat. § 19.97(1). Further, Cardenas

does not provide any legal support for his contention that the court can reverse the Decision as a remedy for a violation of the Open Meetings Law. The court therefore will not reverse the Decision on the ground that the FPC's closed deliberations violated the Open Meetings Law.

**B. *Cardenas' Claims for Accommodation under the Individuals with Disabilities Education Act***

■ Cardenas argues that the FPC should have taken into consideration the Individual Education Plans ("IEPs") of his children, which identify the place of education for both of Cardenas' sons as WSD. Cardenas claims that the FPC should have considered the needs of his children in considering his hardship exemption. Cardenas alleges that a student's IEP requires that student to attend the school named within it, and as such, the Cardenas children have no choice but to attend WSD. In opposition to this argument, the City alleges that a school placement under an IEP is purely a matter of parental choice, and that the Cardenas parents could change their children's enrollment at essentially any time. Both sides incorrectly construe the legal implications of the student placement portions of the IEPs.

IEPs are elaborate documents, promulgated under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C §§ 1400–1485, and related regulations, 34 C.F.R. § 300.130, that local school districts are required to produce for each student with a disability within the district. IEPs are promulgated by a multi-person IEP team, which includes the parents of the student, the student's teachers, the student's regular education teacher if mainstreamed, the child's special education teacher, a local agency representative, and

---

**3.** Pursuant to Wis. Stat. § 59.42, individuals wishing to bring claims under the Open Meetings Law must file a verified complaint with Milwaukee County Corporation Counsel instead of the Milwaukee County District Attorney.

(may include) a therapist trained in the area of the child's disability. 20 U.S.C. § 1414(d)(1)(B). The IEP contains a consideration as to the Least Restrictive Environment ("LRE") that the child may be placed in. Once an IEP for a child has been agreed to and implemented, and the child begins education at the determined LRE, the parents may not revoke consent and have the children moved without conducting a due process hearing unless the local education agency also supports the change or the parties resolve their differences through medication. 20 U.S.C. §§ 1415(e)(2)(B), 1415(f)(1); 34 C.F.R. § 300.506.

In light of the above, Cardenas did have a voice, as a member of the IEP team, in determining whether his children would attend WSD. However, in order to change the placement at WSD would require the reconvening of the IEP team, and in the absence of consensus would require mediation and/or a due process hearing. As such, the City overreaches in claiming that the boys' placement was and continues to be a matter of choice. Regardless, the IDEA contains no separate provisions for Cardenas to bring a claim on behalf of his children against the FPC, and the court will not reverse the Decision based upon this argument.

**C. *The FPC's Alleged Failure to Apply MCC § 5–02.8 as Ordered by the Court***

Cardenas' final claim is that the FPC failed to comply with the January 2000 Order regarding the standards applied in reviewing Cardenas' hardship exception.

In the January 2000 Order, the Court stated the following:

Therefore, § 5–02.8 provides the standards that the FPC may consider in addressing requests for hardship exceptions. Again, the use of the plural word "exceptions," implies that more than one

type may be granted by the FPC.... Therefore the court requires the FPC to examine the merits of Cardenas' request with the review standards in § 5–02.8 as guidance.

(January 2000 Order at 10.) The FPC is authorized to grant hardship exceptions under MCC § 5–02.7, and review standards are provided by 5–02.8, which are listed below:

7. HARDSHIP EXCEPTIONS.

a. Whenever it shall appear to the city service commission, considering the standards hereafter enumerated, that an employe should be granted temporary exception from the requirements of this section, the city service commission shall make a finding based upon the standards and shall file a report with the committee on finance and personnel, listing the name of the employe and the reason or reasons for the exception, such report to be filed within 15 days of such action.

b. In the event that a city employe weds an employe of another jurisdiction which also has a residency requirement, mandating that its employe reside within that jurisdiction's boundaries, and if that employment is in effect at the time of the marriage, the city service commission may grant the city employe an exemption from the city's residency requirements, provided that the following conditions are and remain in effect:

b–1. That the other jurisdiction is willing to enter into an appropriate reciprocity agreement with the commission concerning such transactions.

b–2. That the city employe actually resides with his or her spouse in the spouse's jurisdiction.

b–3. That both employing jurisdictions retain their respective residency policies.

b–4. That the response time required for the exempted employe to arrive at work in emergency situations be reasonable as determined by the commission.

b–5. That the residency requirements of the other jurisdiction would preclude the married couple from living in the city of Milwaukee.

8. REVIEW STANDARDS. a. The following factors may be considered by the city service commission in deciding to grant or not to grant an exception to the residence requirement:

a–1. Availability of persons eligible.

a–2. Requisite technological or professional education.

a–3. Responsibility of the job.

a–4. Quantity of persons eligible.

a–5. Quality of the service to be performed.

a–6. Ability to supervise.

a–7. Need to know conditions within the city.

a–8. Diminution of absenteeism and tardiness.

b. This attempt to establish standards for exceptions of the residency requirement recognizes that such standards need not be specified with exactitude. It further recognizes that mere eligibility and availability does not necessarily offer the range of selection which will contribute to the development of the best service.

(July 1999 Order at 15, 16.) Cardenas argues that because the FPC did not consider the review standards provided by MCC § 5–02.8 in making a determination with respect to Cardenas' request and because the FPC did not specifically refer to the standards in the Decision, the court should reverse the Decision for failing to comply with the January 2000 Order. The City maintains that although the FPC was not required to take into account the review standards enumerated in MCC § 5–02.7, the FPC did, nevertheless, consider the review standards in reaching its decision, and that the decision against Cardenas' request was tantamount to a finding under sec. 5–02.8 that there was no hardship justifying an exception.

### 1. Standard of Review

The court retained jurisdiction over the appeal for a writ of certiorari. As noted by this court in the July 9, 1999 order,

Where a decision by the FPC falls outside the scope of judicial review created by § 62.50, Wisconsin common law permits aggrieved officers to seek judicial review through a petition for a writ of certiorari. See State ex. rel. Kaczkowski v. Board of Fire and Police Comm'rs, 33 Wis.2d 488, 501, 148 N.W.2d 44, 50 (1967). A court reviewing a decision of the FPC may examine the following issues:

1) whether the FPC kept within its jurisdiction;

2) whether the FPC proceeded on a correct theory of the law;

3) whether the action of the FPC was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and

4) whether the evidence was such that it might reasonably make the order or determination in question.

(July 1999 Order at 15.) As such, it is within the court's authority to evaluate the Decision of the FPC under the standards set forth in Kaczkowski.

■ In analyzing the FPC's responsibilities with respect to the MCC § 5–02.8 review standards, the court first notes that the January 2000 Order did not require the FPC to specifically list or discuss all of the individual review standards in its Decision. Rather, the court ordered the FPC to reach the merits of Cardenas' request, using the review standards for guidance.

The court further recognizes, as noted in the January 2000 Order, that deference should be given to local administrative decisions. As Judge Posner has noted, "[t]he omission of an explanation does not violate due process of law where the agency's path can reasonably be discerned even without the usual signposts." *Hameetman v. City of Chicago,* 776 F.2d 636, 645 (7th Cir.1985). However, that deference is balanced by the recognition that the FPC is granted limited jurisdiction by the MCC, and that under Wisconsin law, "any reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority". *Elroy–Kendall–Wilton Schs. v. Cooperative Educ. Serv. Agency,* 102 Wis.2d 274, 278, 306 N.W.2d 89, 91 (1981).

### 2. Absence of Substantial Evidence

The court finds after a careful review of all of the factual evidence and submitted affidavits that, despite two previous rulings and a subsequent hearing, the FPC has (1) exceeded its jurisdiction and (2) failed to set forth an adequate basis for its decision which is not arbitrary, oppressive, or unreasonable. The reasons for these determinations are set forth below.

### a. Plain Meaning of the Ordinance

The plain meaning of the ordinance is the starting point for statutory interpretation. (January 2000 Order at 6.) Section 5–02.7(a) of the MCC states that "[w]henever it shall appear to the city service commission, considering the standards hereafter enumerated, that an employe should be granted temporary exception ... the city service commission shall make a finding based upon the standards...."

The court has previously held that the phrase "standards hereafter enumerated" includes the standards listed in MCC § 5–02.8; the phrase is not restricted to the so-called "marital exception" codified in MCC

§ 5–02.7(b). (January 2000 Order at 7.) The court has previously construed the statement that the "commission shall make a finding based upon the standards" as requiring the FPC to make its determination using the review standards in MCC § 5–02.8 as guidance.

■ The City has advanced the interpretation that the requirements of MCC § 5–02.8 "suggest that the Board [FPC] evaluate residency-exception requests with due regard to the interests of the **City,** and do not refer to the needs of the **employee.**" (Defs.' Nov. 11, 2000 Br. ("Defs.' Br.") at 4, 5) (emphasis in original). The court concurs that this is an adequate description of the jurisdiction granted the FPC by MCC § 5–02.8, and is the only reasonable interpretation that squares with the plain meaning of the MCC sections and the court's previous interpretations of those sections.

### b. Analysis

The court finds that using the plain meaning of the relevant MCC sections, the FPC has exceeded its jurisdiction, and has failed to provide an explanation of the basis for the Decision which is not arbitrary and capricious.

#### (1) The Decision was Beyond FPCs Jurisdiction

■ The FPC has exceeded the jurisdiction granted it by the City charter, by considering factors which have no relation to the needs of the City. None of the findings of fact contained in the Decision address any factors relating to the interests of the City articulated in MCC section 5–02.8, or any others: as noted above, all of the findings of fact relate to either the parties in the case or the specific conditions of WSD. All of the reasons listed in the Decision relate to the conditions the Cardenas family faces in having the boys placed at WSD. The primary reason given

by the FPC for rejecting Cardenas' application was that "this specific situation does not rise to the level of a hardship which justifies an exemption from the residency requirement." (Decision at 5.) The FPC further states that there are benefits to the boarding aspect of the school, "which must be considered in weighing the overall impact of the residency requirement on the Cardenas family." *Id.* Finally, the FPC concludes its decision by stating that "[w]hen all factors are considered, we do not believe that the existing situation constitutes a hardship sufficient to justify an exemption from the residency requirement." *Id.* Nowhere in the findings of fact or the statement of the decision is there any discussion whatsoever of the interests of the City: the discussion is exclusively focused upon the interests of the family. The FPC's jurisdiction in ruling on hardship determinations is restricted to making considerations based upon the factors enumerated in MCC 5–02.8, or more broadly, factors related to the interests of the City. Under Wisconsin law, any reasonable doubt as to the powers of an agency must be construed against that agency. *Elroy–Kendall–Wilton Schools*, 102 Wis.2d at 278, 306 N.W.2d at 91. Having not made its decision based upon the City's interests, the court finds that FPC exceeded its jurisdiction in ruling on Cardenas' request.

### (2) The Decision was Arbitrary and Capricious

■ The City also failed to provide a sufficient record showing the basis for the Decision. This is surprising, given the fact that the City submitted the transcript of the Hearing, as well as the Decision. However, in the absence of any evidence in the transcript or the summary which suggests that the FPC might have made its decision based upon the factors in MCC § 5–02.8, or broadly, upon the interests of the City, the court finds the Decision to be arbitrary and capricious.

The City asks the Court to conclude that the statements in the Decision denying Cardenas' request were "tantamount" to a conclusion that the standards set forth in the MCC were not satisfied by Cardenas. (Defs.' Br. at 5.) The City argues that there were two pieces of evidence included in the record which the FPC could have based its decision upon, and as such, there is credible evidence in the record which would justify upholding the Decision. These two pieces of evidence are (1) of a list of all of the exemptions to the residency requirement, and (2) copies of mileage estimates taken from a website. However, neither piece of evidence constitutes credible evidence which would support the Decision.

The first piece of evidence, the list of residency exemptions granted over the past ten years, does not provide any illumination of the FPC's reasoning. That list includes exactly one previous request for an exemption due to the special education needs of a child, and contrary to the City's assertions that the FPC has never made an exemption for education, that request was granted.

This leaves the court with the collected mileage estimates. The estimates are printouts from an internet search engine listing the distances from various Milwaukee police stations to arbitrary points in the cities of Delavan, Elkhorn, and East Troy, Wisconsin. The printouts establish the mileage as being between 29 and 53 miles, or between a 30–minute and hour-long drive. These estimates might be credible evidence upon which to base an opinion, if the legislative history of the MCC did not dictate a contrary result. The initial draft of the marital exemption, sec. 5–02.7(b), included a mileage requirement, in sub-section (b)(3). That mileage requirement was deleted in the final draft of the charter ordinance that revised the

MCC. (Ch. Ord. 427, File # 941973, Dec. 17, 1996; eff. Mar. 10, 1997.) A court may draw a negative inference from a legislative body's decision to delete a specific reference if that inference does not conflict with the clear import of the Act. *Negonsott v. Samuels*, 507 U.S. 99, 109, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). In light of the City Council's explicit rejection of the milage requirement as a factor for consideration in a hardship exemption, the court cannot find that the FPC's residency determination could credibly have been based upon the map printouts.

In the absence of any findings of fact, statements in the decision record, or documents considered relating to the impact on the City of granting Cardenas' request, the court finds that there is no substantial evidence to support the FPC's findings. As such, the court finds the Decision to be void.

### D. *Equitable Relief*

■ Having failed to discern the FPC's path "even without the usual signposts" as was done in *Hameetman*, 776 F.2d at 645, the court must address the issue of what relief Cardenas is entitled to. In the initial complaint Cardenas requested an injunction against the "arbitrary discrimination" he is subject to, and in his Motion to Reverse the FPC's Decision he also requests attorney fees. The court may in the alternate remand the decision to the FPC for further findings of fact. In light of the inadequacy of any legal remedy at this point in the litigation, as well as the due process concerns raised by asking the FPC, as a defendant in this action, to make findings which may effect its own liability, the court finds it has no choice but to enjoin the City from denying Cardenas' residency exemption.

"[T]here is no formulaic standard for deciding whether to issue an injunction." *Wisconsin Cent. Ltd. v. PSC*, 95 F.3d 1359, 1366 (7th Cir.1996).

The plaintiff who seeks an injunction has the burden of persuasion—damages are the norm, so the plaintiff must show why his case is abnormal. But when, as in this case, the issue is whether to grant a permanent injunction, not whether to grant a temporary one, the burden is to show that damages are inadequate, not that the denial of the injunction will work irreparable harm. *Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir.1992). A permanent injunction is an appropriate remedy where agency action was arbitrary and capricious, and where the plaintiff has shown that damages are inadequate. *Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir.1992). The court is satisfied that Cardenas has adequately met this burden. As an initial note, Cardenas has not sought damages against the City in his renewed motion for summary judgment, only a reversal of the Decision: this would seem to support a finding that damages alone would not be adequate.

"The weighing up of all [the] costs and benefits is the analytical procedure that is or at least should be employed by a judge asked to enter a permanent injunction, with the understanding that if the balance is even the injunction should be withheld." *Walgreen Co.*, 966 F.2d at 276. The court finds that such an analysis of the costs and benefits strongly favors Cardenas.

As noted in the transcript of the Hearing, Cardenas' sons are both in high school at this time: if the court were to remand the case to the FPC for yet another round of hearings, Cardenas' sons may be at the point of graduation before this case is resolved, even at the district court level. (Hearing Tr. at 48.) Cardenas has submitted evidence from a number of experts detailing the hardship experienced by the family, including that of a trained social

worker (Jan. 7, 1999 Rodriguez Aff., Ex A, at 1, 2); the statement of the Cardenas boys' treating physician that to a reasonable degree of medical certainty the Cardenas boys' rehabilitation is best served by allowing the Cardenas boys to live with their parents (Jan. 7, 1999 Haberkamp Aff. ¶ 14); and the statement of Cardenas' sons' teacher who has taught at both WSD and in the Milwaukee Public Schools, that based upon her five years of knowing the boys and two years of teaching them, the Cardenas family would suffer if Cardenas is not granted the waiver. (Jan. 7, 1999 Polenska Aff., Ex. A at 2.) In contrast, the City has submitted no evidence contradicting Cardenas' request for injunctive relief, or any evidence showing that the balance of hardships weighs against the City, save one survey on the effect of invalidating the City's residency requirement, which assumed a relocation of 7,400 public employees and the resulting creation of 6,800 vacant households throughout the City of Milwaukee. (Jan. 7, 1997 Curley Aff., App. at PC5, PC6, PC7.) The court is confident that, after four years of litigation, its order of one residency exemption will not substantially impact the City's tax rolls, in light of the approximately 90 residency exemptions that the City granted between 1988 and 1998. (Dec. 7, 1999 Czaenezki Aff., Ex. 9, at JC1–JC10.) The court also notes that its only alternative, to remand the case to the FPC for further findings of fact, may raise due process concerns, by making the FPC decide an issue where it faces attorney's fees, which is to "ask them to be judges in their own case," *Hameetman*, 776 F.2d at 644, and will likely further delay the ultimate resolution of Cardenas' challenge to the Decision.

In light of the substantial evidence showing a lack of any adequate legal remedy for Cardenas, and that the absence of any such evidence showing the balance of hardships to the FPC is either equal to or greater than that facing Cardenas, the court finds that injunctive relief is warranted in this extraordinary case.

## IV. CONCLUSION

Plaintiff Ricardo J. Cardenas' motion to reverse defendant Fire and Police Commission of the City of Milwaukee's July 6, 2000 decision denying his request for a waiver of defendant ·City of Milwaukee's residency requirement is **GRANTED**.

The July 6, 2000 Decision of defendant Fire and Police Commission of the City of Milwaukee denying plaintiff Ricardo J. Cardenas' hardship exception is **VOID**.

Defendants Fire and Police Commission of the City of Milwaukee and City of Milwaukee are further **ENJOINED** from denying plaintiff Ricardo J. Cardenas' request for a hardship exception. Defendants Fire and Police Commission of the City of Milwaukee and City of Milwaukee have 30 days from entry of judgment to **GRANT** Cardenas' request for the hardship exception.