Robert HAMEETMAN,
Plaintiff-Appellant,
Cross-Appellee,

v.

The CITY OF CHICAGO, et al.,
Defendants-Appellees,
Cross-Appellants.

Nos. 83–1986, 83–2070.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1985.
Decided Sept. 30, 1985.

J. Peter Dowd, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiff-appellant.

Mary Kay Rochford, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.*

POSNER, Circuit Judge.

In 1978 Robert Hameetman, a fireman employed by the City of Chicago, was charged by his superiors with violating a city ordinance which requires that "all officers and employees in the classified civil service of the City shall be actual residents of the City." A hearing officer of the city's Personnel Board conducted a hearing on whether Hameetman was as he claimed a resident of Chicago although his wife and children lived in Indiana. After summarizing the sharply conflicting evidence, the hearing officer's report stated under "findings and recommendations": "The City met its' [sic] burden of proving that [Hameetman] was not an actual resident of the City of Chicago on April 10, 1978. It is respectfully submitted that [Hameetman] be discharged." The report was forwarded to the Personnel Board together with a transcript of the testimony at the hearing. The Board's opinion repeats the hearing officer's conclusion and adds: "On the basis of the foregoing and upon the review of the transcript, and after a full discussion, the decision of the Personnel Board is as follows: That the Respondent, Robert Hameetman, be discharged." And so, in 1979, he was discharged.

He brought suit against various officials and agencies of the city, under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, alleging that the discharge had deprived him of liberty and property without due process of law, in violation of the Fourteenth Amendment. After a bench trial, the district judge concluded that although Hameetman, as a tenured public employee, had had a "property" interest in his job within the meaning of the due process clause and had been deprived of it, the hearing before the Personnel Board's hearing officer had produced enough evidence that Hameetman was not an actual resident of Chicago to sustain his discharge. The judge rejected Hameetman's contentions that the term "actual resident" was too vague, that the Personnel Board and hearing officer had operated without standards, and that enforcement of the ordinance was selective and capricious and also interfered with Hameetman's constitutional right to live with his family. The judge agreed with Hameetman, however, that the findings made by the hearing officer and parroted by the Board had been too skimpy to satisfy the requirements of due process, and vacated Hameetman's discharge and "remanded" the case to the Personnel Board with instructions that it either prepare new findings within 60 days or reinstate Hameetman.

Hameetman filed a timely notice of appeal to this court. The city filed a cross-appeal complaining about the "remand" order, but went ahead and complied with the order and issued new findings, again concluding that Hameetman was not an actual resident of Chicago and should be discharged. Since by issuing new findings within 60 days the Board had complied with the district court's condition precedent to firing Hameetman, it was not required to reinstate him. So he remains fired. There have been no further proceedings in the district court; the parties did not even submit the Board's new findings to that court.

■ The unusual action of the judge in attempting to remand the case before him

* Hon. Stanley A. Weigel of the Northern District of California, sitting by designation.

to a state administrative agency raises questions about our appellate jurisdiction. The first concerns the appealability of the "remand" order by the defendants. Ordinarily an order remanding a case to the court or agency from which it has been appealed is not a final order, and is therefore not appealable under 28 U.S.C. § 1291. See *Freeman United Coal Mining Co. v. Director, Office of Workers' Compensation Programs*, 721 F.2d 629 (7th Cir.1983), and other cases cited in *In re Riggsby*, 745 F.2d 1153, 1156 (7th Cir.1984). Nor is it appealable (despite lack of finality) under 28 U.S.C. § 1292(a)(1) as an injunction, though it is in a literal sense an order to do something. See *Silver v. Secretary of the Army*, 554 F.2d 664, 665 (5th Cir.1977) (per curiam).

■ In this case, however, the district judge's use of the word "remand" was a misnomer. A suit under 42 U.S.C. § 1983 is not a mode of judicial review of a state administrative agency's or state court's action even if the plaintiff is complaining about a denial of due process in the proceedings before the agency or the court and is asking the federal court to enjoin the action. Such a suit resembles but is crucially different from what is misleadingly called "nonstatutory" review of federal administrative action. When an administrative action is judicially reviewable but no statute specifies the route to take to get judicial review, an aggrieved party can bring a suit against the responsible officials in a federal district court under 28 U.S.C. § 1331, the general federal-question statute. See 5 U.S.C. § 703; 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3659 (2d ed. 1985). Such a suit resembles an equity suit but is actually a review proceeding rather than an original proceeding. The court thus can remand the case to the agency, and its order of remand, with immaterial exceptions, is not appealable to the court of appeals; *Freeman* was such a case. But a suit under 42 U.S.C. § 1983 is not a review proceeding even when as here it challenges administrative action that has an adjudicative component. Federal courts have no general ap-

pellate authority over state courts or state agencies. By virtue of statutes such as 42 U.S.C. § 1983 they can decree injunctive and other relief against state officers, including hearing officers and other adjudicators, who violate federal rights; but when in the exercise of that power they order a state officer or agency to grant a hearing to someone or to give him a fuller statement of the basis of the agency's action they are not "remanding" the case. The case that is in federal court did not begin in the state agency but is an independent as well as an original federal action.

■ What the district judge called a "remand" really was a mandatory injunction that the Personnel Board give Hameetman procedural relief in the form of a new set of findings. The state therefore could have appealed under section 1292(a)(1), without regard to whether the judge's order wound up the entire litigation in the district court. There is a practical as well as the already explained logical ground for this result. If a federal court orders a state agency to do something, the agency ought to have a right to appeal immediately and not be so much at the mercy of a single federal judge that it might have to go through long and expensive proceedings on "remand" before being able to challenge the judge's order.

But the defendants did not do this. They filed a cross-appeal after Hameetman filed his appeal. The cross-appeal did not have to be and was not filed within 30 days of the judge's order of "remand," see Fed.R. App.P. 4(a)(3), as an appeal would have had to be filed in order to give us jurisdiction; but by the same token the cross-appeal is within our jurisdiction only if Hameetman's appeal, from which it depends, successfully invoked our jurisdiction. Therefore, to dispose of Hameetman's appeal as well as the cross-appeal, we must decide whether Hameetman's appeal is within our jurisdiction.

■ It is not so by virtue of section 1292(a)(1), at least not clearly so. A plaintiff who obtains an injunction can, it is true, appeal from the order granting the

injunction if he does not think it goes far enough or he has other complaints about it. In effect he is appealing from a refusal to modify an injunction, and such a refusal is expressly made appealable by section 1292(a)(1). Cf. *Steele v. Board of Public Instruction*, 371 F.2d 395, 396 (5th Cir. 1967) (per curiam). In part this is what Hameetman is doing but in part he is complaining about the fact that the district court, at the same time that it issued the injunction, dismissed all of Hameetman's case except the small part that complains about the thinness of the administrative findings. Hameetman thus is complaining about the dismissal as well as about the injunction; and as a general rule one can appeal from an order of dismissal only if that order is final and therefore appealable under section 1291. Although there is some authority that the court of appeals can consider an unappealable order that is related to an order properly before the court, *Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir.1985), we shall not have to explore the application of that principle to the present case. The judge's order granting the mandatory injunction and dismissing the rest of the case was a final decision, and so appealable in its entirety under 28 U.S.C. § 1291; we therefore need not decide whether separate pieces of the order could have been appealed. All of Hameetman's claims were dismissed except his claim that his discharge should be vacated because of inadequate findings. Since the judge's order taken as a whole (that is, including the dismissal as well as the injunction) wound up the proceeding, Hameetman was free to appeal from anything in the order that dissatisfied him.

This assumes that the dismissal was definitive. If it had not been—if the injunction had just been an interim order and the judge had held on to the case so that he could grant additional relief on Hameetman's claims depending on the outcome of the "remand," that is, depending on the city's compliance with the injunction—then Hameetman would have had to wait. Cf. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1103 (5th Cir.1981); *Silver*

*v. Secretary of the Army, supra*, 554 F.2d at 665. But the judge's order concludes, "plaintiff is entitled to no further relief from this court," which is pretty definitive. If Hameetman had been dissatisfied with the new set of findings made by the Personnel Board he would have had to bring a fresh lawsuit.

So we have jurisdiction, and can come to the merits. Hameetman's claim that the enforcement of the ordinance against him was arbitrary requires little discussion. He does not argue that he was singled out for an invidious reason, such as race or political beliefs. The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. See, e.g., *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *Dauel v. Board of Trustees*, 768 F.2d 128, 131 (7th Cir.1985); *Harrington v. United States*, 673 F.2d 7, 11 (1st Cir.1982); cf. *Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *United States v. Batchelder*, 442 U.S. 114, 124–26, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979). Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country.

Hameetman's claim that the key term in the ordinance, "actual resident," is unconstitutionally vague also requires little discussion. Although the term was not authoritatively construed to mean domiciliary till after Hameetman was fired, see *Fagiano v. Police Bd. of City of Chicago*, 98 Ill.2d 277, 71 Ill.Dec. 525, 456 N.E.2d 27 (1983), there could have been little doubt that this is what it meant. For reasons that, whether right or wrong, are constitutionally sufficient, *McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam), the City of Chicago wants its employees to have the commitment to their work for the city that comes from living there. There is not much doubt about

what "living there" means. Firemen and other municipal employees, unlike wealthy cosmopolites, do not have multiple homes scattered over the globe, among which they circulate according to the dictates of high fashion with the result that it is hard to determine where they really live. Firemen are domiciled in the place where they have their permanent residence. The whole thrust of Hameetman's case was that he was domiciled in Chicago and merely visited his family at its Indiana domicile. The city was not constitutionally obligated to advise him how close to the forbidden line he could steer by telling him that a residence in Chicago was not enough, that he must have his permanent residence there.

Hameetman also claims that the city deprived him of liberty by refusing to let him live outside of Chicago when the well-being of a child required him to do so. He had a hyperkinetic child who was doing well in the Indiana school system and might have found adjustment to Chicago difficult, and he argues that the city may not put him to a choice between living with his child and giving up his job as a fireman. He presented little evidence on this point, thus inviting us to speculate that he moved from Chicago to Indiana merely because the Chicago residency requirement was not being enforced—in which event he could not escape the consequences of violating the ordinance by pointing out that moving his child back to Chicago when the ordinance began to be enforced might be stressful for the child. He would be the author of his own dilemma in that case. But in the absence of findings on his motive for leaving Chicago we hesitate to resolve the issue on factual grounds, and shall therefore assume that the motive for his leaving was to improve his child's welfare, and ask what constitutional difference this makes.

■■■■■ A state or city that forces a man to live apart from his family deprives him of a form of liberty protected by the due process clause, and therefore violates the Fourteenth Amendment if due process is denied. See, e.g., *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–

95, 71 L.Ed.2d 599 (1982); *Ellis v. Hamilton*, 669 F.2d 510, 512 (7th Cir.1982); *Franz v. United States*, 707 F.2d 582, 595, 602 (D.C.Cir.1983). Although the words "due process" suggest a procedural right, an inadequate justification for depriving a person of his liberty of association with his family could be a denial of due process. The family rights that the due process clause protects against state action have been held to have a substantive dimension; they are not just an entitlement to fair procedure. See, e.g., *Zablocki v. Redhail*, 434 U.S. 374, 383–87, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978); *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977); *Laurenzo v. Mississippi High School Activities Ass'n, Inc.*, 662 F.2d 1117, 1119–20 (5th Cir.1981). Granted, it is not easy to derive a doctrine of substantive family rights from the language or history of the Fourteenth Amendment; but the doctrine is far too well established to be questioned at our level; our only task is to apply it as best we can to the facts of this case.

That task is complicated, however, by the fact that the scope of the doctrine is unsettled. It has been narrowly construed in cases such as *Califano v. Jobst*, 434 U.S. 47, 53–55, 98 S.Ct. 95, 100, 54 L.Ed.2d 228 (1977), which held that "the general rule, terminating upon marriage the benefits payable to a secondary beneficiary, is unquestionably valid," notwithstanding that "some persons who might otherwise have married were deterred by the rule," *id.* at 54, 98 S.Ct. at 99, and in the legion of cases that have allowed the government to break up families by deporting a father who is an illegal alien, see, e.g., *Delgado v. INS*, 637 F.2d 762, 763–64 (10th Cir.1980). But it has been broadly construed in cases such as *Moore v. City of East Cleveland, supra*, which invalidated a zoning ordinance that forbade people to live together who were not members of the same nuclear family (and so prevented a grandmother from living with her grandson), and *Wilson v. Taylor*, 733 F.2d 1539, 1543–44 (11th Cir.1984), which held that firing a policeman because he was dating the daughter of a convicted

felon and organized-crime figure deprived the policeman of his liberty of familial—or rather proto-familial—association. *Wilson,* however, can easily be distinguished from this case—as well as questioned on its own terms—as having been decided under the First Amendment, mysteriously construed to protect rights of association unrelated to the expression of ideas.

From the welter of precedents we can extract at least the principle that state or local regulations are not unconstitutional deprivations of the right of family association unless they regulate the family directly, as in the ordinance struck down in *Moore v. City of East Cleveland,* or the "adult-only" rental policy invalidated in *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1310–11 (9th Cir.1982)—and even *Wilson v. Taylor* was such a case, at least if "family" is construed very broadly. The collateral consequences of regulations not directed at the family, such as regulations designed to keep illegal aliens out of the country, do not bring the constitutional rights of family association into play. We admit that this distinction does not reconcile *Moore* with *Jobst;* but that cannot help Hameetman, since *Jobst* rejected the asserted right, and *Moore* as we said is a different type of case from the present. We have our doubts whether *Halet* was correctly decided. Although an adults-only rental policy might in a rare case result in parents' living apart from their children, the real purpose and dominant effect of such policies is not to break up families but to spare people who do not have young children of their own the noise and commotion of other people's children; the incidental effects on families with small children must be very small. But this is just to say that the case law in this area, maybe because the subject matter is so emotional and the constitutional guideposts so sparse, is untidy. Still, we can find no case invalidating a regulation merely because it might, as in the present case, have the incidental and unintended effect of inducing family members to live apart. This is no accident. Breathtaking vistas of liability would open up if the doctrine of constitutional family rights reached as far as Hameetman would press it. Every award of custody would raise a constitutional issue. Persons employed by state or local governments in jobs involving frequent travel, long hours, or heavy stress could complain that their family associations were being adversely affected, as well they might be. Residency requirements would have no bite at all, since people who prefer suburban to city living usually do so because they think their family will be better off, and they might therefore be induced to live apart from their family—as Hameetman was.

Despite what we have said, maybe there are extreme cases where a city's refusal to make an exception to a residency requirement would be so cruel and arbitrary an interference with a family as to be deemed a denial of due process of law; but this is not so extreme a case. Hameetman does not argue that Chicago has no facilities for treating hyperkinetic children. He did not, when he left Chicago years ago, tell his superiors about his child's condition, ask to be exempted from the residency requirement, and thus enable a contemporaneous record to be made on the bona fides of his request. The impact of the residency requirement on his child and through the child on Hameetman's familial associations is too indirect to compel the City to waive the requirement in Hameetman's favor, when the requirement is not a regulation of the composition or location of the family, though like almost everything that government does it may affect particular families.

We come to the procedural objections to Hameetman's discharge. There were no deficiencies in the administrative proceedings themselves, as distinct from the findings issued at their conclusion. A full evidentiary hearing, upon adequate notice, before an impartial hearing officer, with a right of appeal to a higher administrative board, also impartial, is certainly all the process that is constitutionally due an employee whom his employer wants to re-

move for violating the conditions of his employment. The adequacy of the findings issued by the hearing officer at the conclusion of the hearing presents a substantial issue, however, though it may seem to be a moot one because the Board went ahead and made new findings as ordered by the district judge. It might be moot if just the defendants were complaining about the order—though even then there would be an argument that the issue was justiciable as capable of repetition but evading review because of the short deadline that the judge imposed and the likelihood that the city will be faced with the identical issue in subsequent cases. But the plaintiff is also challenging the order, as patently inadequate to cure the defect in the findings, and if he is right a new injunction must be issued.

■■■ The order was indeed an inadequate remedy, if a wrong was done to the plaintiff. The findings that the Personnel Board issued on "remand," although extremely brief, are good enough on their face; but when there is conflicting oral testimony going to the heart of the question to be decided, so that an evaluation of the witnesses' demeanor may be critical to deciding the question correctly, an appellate tribunal—especially, as we shall see, the City of Chicago's Personnel Board—will have a hard time making responsible findings of fact. Administrative agencies are, it is true, allowed to make findings on issues of credibility without taking live testimony, see *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 S.Ct. 456; 466–69, 95 L.Ed. 456 (1951)—even without getting recommended findings from the subordinate officer before whom the testimony was taken, see, e.g., *Utica Mutual Ins. Co. v. Vincent*, 375 F.2d 129, 132 (2d Cir.1967) (Friendly, J.); *Guerrero v. New Jersey*, 643 F.2d 148, 149–50 (3d Cir.1981) (per curiam) (dictum). So the fact that the district judge required an appellate body to make independent findings of credibility did not in itself deny Hameetman due process of law. See *Moore v. Ross*, 687 F.2d 604, 609 (2d Cir.1982); *Bates v. Sponberg*, 547 F.2d 325, 331–32 (6th Cir.1976). But

that does not mean it was an adequate procedure to cure a denial of due process. Indeed, the cure seems not to have been suited to the particular disease, which was not just the Personnel Board's failure to make findings but also and more important the failure of the hearing officer, before whom sharply conflicting testimony was given, to do so. And whether or not findings by the Board would have been an apt cure in some other circumstances, they were not here. The members of the Board are defendants in the action. To ask them to make findings that may affect their own liability, at least for attorneys' fees (for as adjudicative officers they have absolute immunity from damage liability), is to ask them to be judges in their own case, which violates elementary notions of due process. Maybe in light of this fact the procedure "on remand" was an independent violation of the due process clause, though we shall not have to decide that.

■■■ On the other hand, maybe there was no disease—maybe the original findings, skimpy as they were, did not violate Hameetman's constitutional rights. The shorthand definition of due process as notice and an opportunity for a hearing is incomplete. We have mentioned the requirement that the hearing officer be impartial. We may assume without having to decide that another requirement is that the hearing officer explain the basis of his action or recommendation. We state this proposition tentatively because it is apparent that the duty (if any) to explain the grounds of decision is not always a requirement of due process. Juries, when they render general verdicts, do not explain the basis of the verdict. While federal district judges are required by Fed.R.Civ.P. 52(a) to issue reasonably detailed findings of fact and conclusions of law in bench trials, we have not heard it suggested that this is required by the Constitution. And when federal district judges dispose of a case without a trial, as in granting a motion to dismiss or summary judgment, Rule 52(a) expressly excuses them from having to issue findings and conclusions. See, e.g.,

*Clay v. Equifax, Inc.,* 762 F.2d 952, 955–58 (11th Cir.1985).

Yet there is considerable authority that due process of law requires that the nonjudicial decision maker—the agency or its hearing officer as distinct from a judge or a jury—"should state the reasons for his determination and indicate the evidence he relied on." *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). This is a back-up safeguard, designed to make sure, so far as it is possible to do so, that the hearing which due process requires is a meaningful one, as it would not be if the decision maker based his decision on materials outside of the record that was compiled at the hearing, other than such extra-record materials as the agency could properly take official notice of. See, e.g., *id.; Wolff v. McDonnell,* 418 U.S. 539, 565, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974); *Linwood v. Board of Education,* 463 F.2d 763, 770 (7th Cir.1972). Maybe, since administrative agencies are not so confined by rules of evidence as judges and juries are, they are more likely to base decision on matters outside of the hearing record. Assuming therefore that state hearing officers are under a federal constitutional obligation to explain the basis of their decisions, as judges and juries are not, still we do not think that the failure to comply with that duty is actionable in this case, as there is very little doubt what the basis of the hearing officer's (and Personnel Board's) decision was. The duty to explain presupposes that the explanation is not obvious; where it is, a statement of reasons is not required.

Having recited the testimony of the opposing parties and added his conclusion that the city had carried its burden of proof, the hearing officer made reasonably clear that he disbelieved Hameetman's testimony that he lived most of the time in Chicago and considered the city his domicile. If the hearing officer had believed Hameetman, he would surely have found against the city. There was, however, much evidence against Hameetman—including the testimony of a city investigator who camped outside Hameetman's Chicago apartment for several days and saw neither hide nor hair of him, the testimony of the same investigator who saw Hameetman living with his family in Indiana, testimony about a neighbor of Hameetman's in Chicago who laughed at the idea that Hameetman lived in the apartment he rented from his daughter, and the fact that the apartment had no kitchen or bathroom. It is conceivable, but highly improbable, that the hearing officer believed Hameetman's testimony but thought that to be an actual resident of Chicago Hameetman would have had to spend seven days a week there, or thought that a person's actual residence is the domicile of his wife and children, or something equally wide of the mark. It would have been better if the hearing officer had negated the possibility that his decision was based on findings of fact favorable to Hameetman followed by a zany legal conclusion against him, but the omission of an explanation does not violate due process of law where the agency's path can reasonably be discerned even without the usual signposts. A familiar principle of judicial review of federal administrative decisions, see, e.g., *Amoco Production Co. v. FERC,* 763 F.2d 265, 268 (7th Cir.1985), we think it also applicable to the scrutiny of state administrative decisions for compliance with the due process clause of the Fourteenth Amendment. The principles of federalism require it seems to us that the due process clause not be interpreted to place more stringent procedural constraints on state agencies than the same language in the Fifth Amendment, plus the Administrative Procedure Act and the body of federal administrative case law, places on federal agencies.

Since the district judge erred in holding that the original administrative findings were inadequate, the inadequacy of his curative order is harmless. The defendants were entitled to judgment in their favor on all issues and the judgment of the district court will be modified accordingly and as modified affirmed. No costs in this court.

MODIFIED AND AFFIRMED.

WEIGEL, Senior District Judge, concurs in the result.