Opinion for the Court filed PER CURIAM.
Concurring opinion filed by Senior Circuit Judge SILBERMAN.
PER CURIAM.
The District of Columbia (and various D.C. government officials) appeals from a decision of the district court granting partial summary judgment to appellees, a class of former D.C. government employees whose disability compensation benefits have been terminated, suspended, or reduced. The court concluded that the benefit program’s lack of written guidelines and published rules caused a violation of the Due Process Clause and the D.C. Administrative Procedure Act (DCAPA). The court reinstated benefits for class members and remanded to a D.C. agency to undertake rulemaking. Immediately after oral argument we granted a stay of the district court’s reinstatement order. We reverse the judgment on both claims, vacate the reinstatement order, and direct a limited remand.
I
Plaintiffs challenge the procedural adequacy of the District of Columbia’s employee disability compensation program (governed by Title 23 of the District of Columbia Government Comprehensive Merit Personnel Act (CMPA) of 1978)[1]— specifically, the circumstances under which class members lose benefits. Under the CMPA, District employees who are injured in the performance of their duties are entitled to monetary compensation, medical services and appliances, and vocational rehabilitation. The compensation levels depend on whether an employee’s disability is partial or total, and is further based on a statutory schedule. After an employee is determined to be disabled, “[i]f the Mayor or his or designee has reason to believe a change of condition has occurred, the Mayor or his or her designee may modify the award of compensation.” (Emphasis added). For purposes relevant to this suit, a “change of condition” obviously means a reduction or elimination of the condition that caused the disability, which of course is the governing statutory standard. A beneficiary displeased with the District’s determination has thirty days to request a hearing before a Department of Employment Services disability compensation administrative law judge, and at the hearing, the ALJ must “receive such relevant evidence as the claimant adduces.” The agency then must notify the beneficiary of the decision in writing within thirty days *395 of the hearing. The beneficiary may file an application for review within thirty days of receipt of that decision with the director of the Department of Employment Services, who must notify the applicant of his or her decision in writing. The beneficiary, within thirty days of that decision, may then file an application for review with the D.C. Court of Appeals.
In their initial complaint, plaintiffs alleged that despite the CMPA’s rather elaborate procedures, the program provided insufficient pre-deprivation process to beneficiaries whose benefits had been reduced or terminated under the statute. They alleged that the CMPA failed to provide pre-deprivation notice and an opportunity to respond, even in writing, to a benefits termination decision and also that the District’s termination procedures were inadequate in their explanations of termination decisions and beneficiaries’ appellate rights. Plaintiffs moved the following month for a preliminary injunction reinstating their benefits and enjoining the termination of those benefits without a more thorough pre-termination process.
In an October 2001 opinion, the district court recognized that under Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), appellees had a property interest in their continued receipt of disability benefits. The court went on to observe that the program’s formal pre-termination procedures were less elaborate than those sanctioned in Mathews. The CMPA itself provided for no pre-ter-mination “hearing,” nor time frame within which a requested post-termination hearing had to be scheduled. The District asserted that, as a matter of policy (although unwritten), beneficiaries were given thirty days of continued benefits after receiving an initial termination notice. According to the District, during that period they could seek reconsideration by written submission and receive a decision within two or three weeks. Although the initial notice did not — at least initially — give an extensive explanation of the District’s “reason to believe a change of condition has occurred,” it did typically provide the physician’s prognosis on which the District had relied. And according to the District, the notices advised beneficiaries of the thirty-day reconsideration period as well.
The district court expressed concern that the District’s pre-termination procedure was not set forth in any formal general regulation or handbook, as opposed to in the individual notices. The court found the “looseness of the reconsideration process and the lack of any enforceable grace period” problematic. (Emphasis added). The district court thought it particularly troubling that even if beneficiaries received the thirty-day grace period during which they could request reconsideration, there was no guarantee that either a beneficiary’s reconsideration request would be resolved during that period or that the grace period could be extended to allow for bureaucratic delay in responding to the reconsideration request. This, coupled with the District’s alleged exclusive reliance on the findings of independent medical examiners (doctors retained by the District), rather than on those of treating physicians, led the district court to conclude that appellees were substantially likely to prevail on the merits. Nevertheless, the court denied the motion for a preliminary injunction after finding that the equitable factors weighed against such relief.
Plaintiffs amended their complaint to add the administrator of the disability compensation program (an independent contractor) as a defendant[2] and to add a *396 claim alleging the District’s violation of the D.C. Administrative Procedure Act (claim seven). Then, more than a year later, in January 2003, plaintiffs filed a third amended complaint modifying the DCAPA claim and substituting a new claim six alleging that the District’s failure to set forth its procedures in written rules violated due process.
Appellees moved for partial summary judgment on claims six and seven. Like claims one through five, claim six is premised on 42 U.S.C. § 1983. Specifically, it asserts that “[defendants have failed to adopt written and consistently applied standards, policies and procedures governing the termination, suspension and modification of benefits in violation of the Due Process Clause.” The DCAPA claim (claim seven) alleges that defendants violated that act by adopting policies, practices, and procedures regarding the termination, suspension, or modification of disability benefits without engaging in notice-and-comment rulemaking.
This time, in September 2004, the district court granted plaintiffs’ motion, see Lightfoot v. District of Columbia, 339 F.Supp.2d 78 (D.D.C.2004); and the court denied the District’s motion for reconsideration in January 2005, see Lightfoot v. District of Columbia, 355 F.Supp.2d 414 (D.D.C.2005). Observing that the issue presented by claim six was “purely legal” — “whether Due Process demands that notice and the potential for arbitrary decision-making requires that written policies and procedures exist to limit discretion and guide the termination, suspension or modification process” — the court concluded that “this largely unwritten system full of guesswork and innuendo fails to meet the strictures of Due Process.” The court purported to decide only claim six — that the absence of more specific guidelines governing termination procedures violated due process, and not that the procedures actually employed did so. As to claim seven, the district court concluded that “[defendants’ reliance on unwritten ‘best practices’ and unpublished procedures to guide the Disability Compensation Program constitute^] rule-making under the DCAPA” and was not authorized as an exception to notice-and-comment rulemak-ing for internal agency procedures.[3]
As noted, the district court remanded the case to the District for rulemaking and ordered that disability compensation benefits of all members of the plaintiff class be reinstated until individualized termination or modification determinations could be made under validly promulgated rules. The remand order further directed the District to “strongly consider” promulgating rules on eleven procedural issues that the court implicitly considered inadequately resolved.[4] The court referred the ques *397 tion of possible retroactive relief related to claims six and seven to a magistrate judge for further proceedings.
Denying the District’s motion for reconsideration, the court strongly objected to the District’s characterization of the ordered relief as an injunction and insisted that “[t]he [cjourt did not issue an injunction and did not analyze the case under the legal standards for an injunction.” According to the district court, it had merely “void[ed]” the system and remanded for rulemaking.
II
The District seeks reversal of the summary judgment as well as vacation of the reinstatement order. Rather peculiarly, the District explicitly does not seek vacation of the remand order — presumably because the District responded with statutory amendments and emergency regulations that largely: met the district judge’s “suggestions.”[5] But if we agree with the District that the court should not have granted summary judgment on either claim, the remand order will perforce lose any vitality.
Appellees respond by first challenging our appellate jurisdiction, pointing out that the district court has not issued a final judgment. The District concedes the point but contends that the reinstatement order is an injunction appealable under 28 U.S.C. § 1292(a)(1). Although appellees reiterate the district court’s contention that it did not grant an injunction, we rather easily conclude that the district court’s reinstatement order was just that. *398 It ordered the payment of benefits to hundreds of former employees. Indeed, up to the time of the district court’s 2004 opinion, both the court and appellees consistently characterized reinstatement of benefits as injunctive relief. For example, when the court denied the preliminary injunction in 2001, it stated that “[plaintiffs seek a preliminary injunction reinstating their benefits and enjoining [defendants from terminating these benefits without a more thorough pre-termination process.” That is exactly the relief the court ordered, although in a different form. Ap-pellees’ subsequent third amended complaint likewise requested this relief and phrased it in terms of an injunction.
The court seemed to be under the impression that it could treat this case as if it were an administrative law review of agency action and thus issue the reinstatement and remand orders without implicating 28 U.S.C. § 1292(a)(1). But as the Seventh Circuit has recognized, a § 1983 suit is not one to review the actions of a state agency. “Federal courts have no general appellate authority over state courts or state agencies.” Hameetman v. City of Chicago, 776 F.2d 636, 640 (7th Cir.1985). Thus, even when a district court purports to remand to a state agency under § 1983 — as did the district court here — it actually issues an injunction. See id. The reinstatement order is a fortiori an injunction.
Ill
The district court’s grant of summary judgment on claim six was based on its view that the District was terminating disability benefits without standards and that this constituted a violation of due process. It may well be the case that an agency that terminates such statutorily-entitled benefits without any reason violates due process, because that would deprive a beneficiary of the capacity to challenge the termination. More controversial, see infra at 1-7 (Silberman, J., concurring), is the claim that the Due Process Clause may impose a requirement of substantive standards — independent of statutory standards — that may be used to restrict an administrative agency’s decision to terminate or modify a protected liberty or property interest. Assuming arguendo that such a cause of action can be made out, we think it is wholly without merit here because the CMPA and D.C. court of appeals decisions themselves provide ample standards that would satisfy any such due process claim. There is certainly no conceivable due process claim that could be predicated on the notion that an agency must proceed to establish such standards through rulemaking rather than case-by-case determinations. See NLRB v. Bell Aerospace Co., 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).
Appellees’ claims one through five raise issues regarding the adequacy under due process of the specific procedures employed by the District, an analysis of which the district court ostensibly has not yet undertaken. We thus conclude only that the district court’s grant of summary judgment on claim six was error.
IV
The district court also granted summary judgment on claim seven, which is premised on the D.C. Administrative Procedure Act. The court held that the District’s reliance on unwritten “best practices” and unpublished procedures to guide the administration of the disability benefits program constituted rulemaking under the DCAPA and that because such rulemaking was not pursuant to the DCAPA’s notice- and-comment procedures, it was unlawful. The District argues that the procedures *399 were internal staff directives and thus within a rulemaking exception and, in any event, that the district court abused its discretion in exercising supplemental jurisdiction over this “unsettled and complex issue of District law.”
In light of our reversal of summary judgment as to claim six, we think it appropriate to remand claim seven back to the district court for reconsideration of its decision to exercise supplemental jurisdiction over that claim. See 28 U.S.C. § 1367(c). First, it may be that on remand there are no longer any viable federal claims in this suit, in which case the district court should dismiss the DCAPA claim. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Second, while neither party has briefed the issue, the DCA-PA claim may very well be moot. The District has not appealed the remand order, plaintiffs have received substantial post-termination process, and the District has gone on to adopt amendments to the CMPA and new emergency rules. Moreover, money damages are not an appropriate remedy under the DCAPA.
Third, and most importantly, the DCA-PA’s judicial review provision places exclusive jurisdiction in the D.C. Court of Appeals to review District agency action. See Fair Care Found, v. Dep’t of Ins. and Sec. Reg., 716 A.2d 987, 997 (D.C.1998). As we have already noted, a federal district court hearing a § 1983 due process suit does not have comparable authority; it cannot, for instance, remand a case to a state agency, thereby acting in something of a supervisory capacity. Compare Hameetman, 776 F.2d at 640, with Webb v. Dep’t of Human Servs., 618 A.2d 148, 152 (D.C.1992). For these reasons, the district Court might well conclude that it would be unwise to exercise supplemental jurisdiction over this District claim. We previously indicated as much in Robinson v. Palmer, 841 F.2d 1151, 1157 (D.C.Cir.1988), where we agreed with the district court’s refusal to decide a DCAPA claim that a District agency had failed to comply with notice-and-comment rulemaking requirements. To be sure, we have not been consistent; our earlier cases were to the contrary. See Spivey v. Barry, 665 F.2d 1222, 1234 (D.C.Cir.1981); Milhouse v. Levi, 548 F.2d 357, 365 n. 19 (D.C.Cir.1976). But those earlier cases did not consider the anomaly of a federal court reviewing a District agency. Of course, that does not mean that a federal court lacks authority to entertain a claim under § 1983 that would also be cognizable as a DCAPA claim to the D.C. Court of Appeals. See City of Chicago v. Int’l College of Surgeons, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); District Props. Assoc. v. District of Columbia, 743 F.2d 21, 26-27 (D.C.Cir.1984).
Given these concerns and the parties’ minimal briefing on these issues, we will remand claim seven to the district court to allow it an opportunity to reconsider its exercise of supplemental jurisdiction.
‡ ‡ ‡ ‡
Based on the foregoing, we reverse summary judgment on both claims, vacate the reinstatement order, and remand the case to the district court for further proceedings consistent with this opinion.

. See D.C.Code § 1-601.01 et seq. (2001). As explained below, the CMPA was amended subsequent to the district court's grant of summary judgment.

. CLW/Creative Disability Management is an independent contractor to whom the District *396 contractually delegated authority to decide disability compensation claims and make award modification decisions.

. The District contends that the third-party claims administrator employs "best practices,” which it describes as the unwritten, industry-standard methods of weighing evidence and reaching an eligibility determination.

. The Court’s suggested topics for rulemaking were as follows:
•What regular opportunities do beneficiaries have to provide medical or vocational
information to a claims adjuster prior to a decision to terminate, suspend or modify disability benefits?
•What are the protocols that govern the independent medical evaluation — when, why, and where one is performed — and the content of the resulting report?
•What weight is assigned to the independent medical evaluation v. the opinion [of] the treating physician, and does the treating physician have an opportunity to comment on the independent medical evaluation before a decision is made?
*397 •Does the beneficiary have the right to access his/her file before the termination decision? What deadlines must the third party administrator follow once file access is requested?
•May a terminated beneficiary retain counsel, and does their attorney have the same right to review the beneficiary’s file in order to prepare necessary argument?
•What standards are employed in making the termination decision, and what weight is afforded each piece of information before the adjuster?
•What standard of review is employed on reconsideration and appeal?
•What is the specific timeline for reconsideration and appeal?
•Are there extensions of time for good cause if a personal or other emergency prevents a beneficiary from responding to a termination notice in the outlined time period?
•What kinds of information may beneficiaries submit in response to a notice that their benefits will be terminated?
•Under what circumstances are benefits paid pending reconsideration subject to re-coupment, and what are the procedures by which a beneficiary may seek a waiver?

. Just before the district court issued its decision on reconsideration, the D.C. Council enacted the Disability Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-685, 52 D.C.Reg. 1449 (Jan. 4, 2005), which took effect April 5, 2005. In relevant part, the Act formalizes the thiriy-day reconsideration period and prohibits any termination of benefits either during that period or prior to resolution of a reconsideration request.
Since February 2005, the director of the District’s Office of Risk Management has also complied with the remand order by issuing emergency rules. See 52 D.C.Reg. 5481 (Jun. 10, 2005). The emergency rules expire 120 days after issuance, and it appears that identical emergency rules have been adopted on a rolling basis. See, e.g., 52 D.C.Reg. 8964 (Oct. 7, 2005). These rules provide additional guidelines for the District's benefits modification and termination procedures, including enumerating factors on which a modification or termination decision can be based, reaffirming the thirty-day reconsideration period, and providing reasons that would justify the District’s reliance on a report of an independent medical examiner over that of a treating physician. The rules also require the District to provide beneficiaries "a narrative description of the rationale” for a modification or termination decision.