NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted January 18, 2008[*]
Decided January 22, 2008

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-2368

| | |
|---|---|
| BRAD R. JOHNSON,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois |
| *v.* | No. 04-2009 |
| CITY OF KANKAKEE, et al.<br>    *Defendants-Appellees.* | Harold A. Baker<br>*Judge.* |

**O R D E R**

Brad Johnson, a homeowner in Kankakee, Illinois, shares his home with his wife, child, and several unrelated people.  The city, when it found out about this living arrangement, contacted Johnson and informed him he was required by ordinance to submit to an inspection and obtain a rental license to use his property in this way.  After receiving multiple tickets for failing to comply with the city's ordinance, Johnson was found guilty at an adjudication hearing for violating the ordinance.  He then filed suit in the district court against the city and several city

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

officials (collectively, the "city"), alleging that they violated his constitutional rights. Johnson and the city cross-moved for summary judgment. The district court denied Johnson's motion, but granted the city's because there was no constitutional violation and therefore the city officials were immune from suit. Johnson now appeals the district court's decision, and we affirm.

Johnson first argues the district court erred because it disregarded unsupported assertions from his complaint, which was sworn under penalty of perjury. The district court stated that it "must disregard unsupported assertions from the complaint," and that Johnson needed to do more than merely rest on his pleadings. The district court erred, however, because verifying a complaint converts its factual assertions into an affidavit to the extent that those assertions comply with the requirements for affidavits, such as whether the affiant has personal knowledge of the assertions. *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996); *see* FED. R. CIV. P. 56(e). Nevertheless, the district court's error was harmless because Johnson does not offer, and we cannot find, any factual assertions within Johnson's personal knowledge, disregarded by the district court, that would affect the outcome of his case.

Turning to the merits, Johnson argues that the ordinance is overbroad because it unconstitutionally forbids homeowners from living with their families without obtaining a rental license. The ordinance provides, "No person . . . shall rent, lease or allow a person other than the legal owner to occupy any dwelling unit within the City of Kankakee, unless the City of Kankakee has issued a current unrevoked operating license in the name of the legal owner of record for the specific dwelling unit." KANKAKEE, ILL., CODE ch.8, art. IV, § 8-17 (112.1) (2003).[2] As the district court correctly concluded, however, Johnson lacks standing to argue that the ordinance violates the right to family association. To establish standing, Johnson would have to first show an injury in fact to a protected interest. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005). Because Johnson does not contest that he had unrelated people living in his house, he cannot show that he was forced to get a rental license because he lived with his family. Although Johnson argues that he received one ticket because his wife lived in the home, there is no evidence showing that the city knew that his wife—whose last name is different than Johnson's—was married to Johnson. The city contends—and there is no evidence to the contrary—that it does not enforce the ordinance against families.

---

[2]The city and Johnson cite this code section as KANKAKEE ILL., CODE ch.8, art. IV, § 8-14, but the most recent version available lists this ordinance at § 8-17. http://www.ci.kankakee.il.us/Ordinances/Ch08.htm (last visited Jan. 8, 2008). Although the parties have not addressed the discrepancy, it appears the Kankakee Code has been renumbered.

Furthermore, although we relax the rules of standing to permit overbreadth challenges where the party whose rights are implicated may not be in a position to assert those rights, *United States v. Holm*, 326 F.3d 872, 875 (7th Cir. 2003), there is no reason to suspect that parties to whom the statute was applied because they were living with their families—if such people exist—could not assert their own rights, so there is no reason to relax the standing requirements here. Thus, Johnson lacks standing to challenge the ordinance as overbroad because it could apply to families.

Even if Johnson did have standing, he would not prevail in his argument that the ordinance violates the right of family association. On its face, the ordinance appears to require homeowners to obtain a rental license to live with family members who are not also owners of the home. However, we will not conclude that local regulations violate the right of family association unless they regulate the family directly. *Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir. 1985); *Doe v. Biang*, 494 F.Supp. 2d 880, 893 (N.D. Ill. 2006). For example, as explained in *Hameetman*, regulations designed to keep illegal aliens out of the country that have the indirect effect of separating parents from children "do not bring the constitutional rights of family association into play" because they are mere "collateral consequences of regulations not directed at the family." 776 F.2d at 643. Kankakee's ordinance requiring rental licenses does not regulate the family directly. It is aimed at preventing problems caused by the failure of rental property owners to maintain their property. And, as explained above, it is undisputed that the city does not enforce the ordinance against families. Thus, the ordinance does not impede upon the right of family association.

Johnson also challenges the ordinance as applied to his living arrangement with unrelated individuals, arguing that it violates his rights to direct the upbringing of his child, privacy, religious freedom, freedom of association, and travel. The ordinance, however, does not infringe on any of those rights directly. *See Hameetman,* 776 F.2d at 643. As the district court noted, Johnson believes his living arrangement enhances these rights by helping to provide for the religious instruction of his child (one of his renters was a clergy member) and by providing a support system for his wife while he travels out of state, but he does not show how the ordinance prevents him from exercising those rights. Johnson counters by arguing that his rights have been infringed because they have been burdened, but he does not explain how these rights have been burdened, merely asserting their existence. The only right we can imagine the ordinance burdening is the right to privacy because the ordinance requires homeowners to submit to inspections. However, municipalities may conduct administrative inspections to enforce housing ordinances so long as they are reasonably necessary to enforce a valid public interest. *See Camara v. Muni. Court of San Francisco*, 387 U.S. 523, 538 (1967); *Platteville Area Apartment Assoc. v. Platteville*, 179 F.3d 574, 578 (7th Cir. 1999).

And Kankakee has a procedure for obtaining administrative warrants, if the homeowner refuses to consent to the inspection. *See* KANKAKEE, ILL., CODE ch.8, art. IV, § 8-17 (112.24) (2003). Thus we do not see this ordinance as improperly burdening the right to privacy or any of the other asserted rights.

Johnson next argues that the city violated his right to equal protection by selectively enforcing the statute. But he does not further develop this argument except to say that selective enforcement, by definition, violates equal protection. That is not the law. *E.g., Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127-28 (7th Cir. 2004) ("[S]elective enforcement of the laws is not actionable as a violation of equal protection unless the selection is based on an invidious criterion such as race."). Because Johnson does not develop this argument, it must fail.

None of Johnson's asserted constitutional rights were violated, and the district court, therefore, correctly granted the city's motion for summary judgment on the basis that the individual defendants were immune from suit. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Furthermore, Johnson could not maintain a suit pursuant to 42 U.S.C. § 1983 against the city of Kankakee absent an official policy that caused a constitutional violation. *See Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 691 (1978); 42 U.S.C. § 1983. Therefore, the district court correctly granted summary judgment on this claim as well.

Finally, Johnson argues that the district court erred because it denied his motions to compel the city to produce its enforcement records of the ordinance as opposed to merely allowing Johnson to inspect the city's files. We review discovery rulings for an abuse of discretion. *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 646 (7th Cir. 2001). We will not reverse absent a clear showing that a denial of discovery resulted in actual prejudice to a party. *Id.* at 646-47. Johnson has not told us what he expected to find in the city's records, and thus he has not shown prejudice. Furthermore, the city's enforcement records could not have established a violation of Johnson's constitutional rights. Even if they had shown that the ordinance is sometimes enforced against families, Johnson lacked standing to challenge the statute on that basis. Thus, the district court did not abuse its discretion in denying Johnson's motions to compel.

AFFIRMED.